Samuel W. Eager, J.
This action is one to enforce the provisions of a restrictive covenant claimed to generally hind the lots situate within an area in the city o'f New Rochelle laid out and known as “ Neptune Park”. It appears that in 1891 all the land within this area was.owned by one Adrian Iselin, Jr., and that, on June 1,1891 he caused to be filed in the office of the county clerk of Westchester, a map of the land dated March, 1891 and entitled a “ Map of Neptune Park adjoining the Village of New Rochelle, belonging to Adrian Iselin, Jr.” By said map, the land was subdivided into building lots, and in particular, there were set forth thereon 96 such lots numbered 1 to 96 inclusive. Iselin, commencing in 1891, proceeded to sell the lots, and all of his deeds to lots sold prior to July 3, 1923 contained restrictive covenants to the effect that the grantees and their heirs and assigns should not at any time thereafter “ erect, maintain or permit upon any part of the said premises, any tenement house, nor any dwelling house other than a private dwelling to be occupied by not more than two families ”; provided, however, that, the covenant in the deeds conveying seven of the lots restricted the use thereof to a private dwelling to be occupied by not more than ‘ ‘ one family ’ ’. As of 1923 Iselin had sold and conveyed 85 of the 96 numbered lots, and all were sold and conveyed subject to the covenant, and on July 3, 1923 the remaining 11 numbered lots and an unnumbered lot in the Neptune Park area, together with other properties owned by him, were conveyed by him to Adlin Corporation. The deed to Adlin Corporation did not contain any restrictive covenant, but it appears that this corporation was a real estate holding corporation owned and controlled by Iselin. It further appears that this corporation proceeded to dispose of the lots, and that its deeds, on the sale and conveyance of the same, contained this very same restrictive covenant. Thus, all of the lots in Neptune Park were ultimately conveyed subject to the covenant, excepting, however, two unnumbered lots, and it does not appear what happened to them.
The plaintiff owns lots 64, 65 and the northerly 40 feet of lot 66 in the same Neptune Park, and these premises are improved by a one-family dwelling occupied by plaintiff and her husband. The defendant Colgate Properties Corp. (hereinafter *303 referred to as “ Colgate ”) has acquired and owns portions of lots 37, 38 and 39, and plans the erection and maintenance thereon of a six-story apartment house type building designed to contain 66 separate apartments for separate family occupancy, together with a 44-car parking lot. The defendant Chieco owns lot No. 67 and a portion of lot No. 66; and the dwelling thereon, though originally constructed for use by two families, has been converted to contain at least three separate apartments and is now used by at least three separate families.
The respective properties of the parties are situate in Neptune Park and the respective titles come by way of mesne conveyances starting with deeds out of Iselin, which deeds contained the restrictive covenant in question. The covenant in plaintiff’s deed restricts occupancy o'f any dwelling house erected on the premises to one family, while the wording of the covenant in the deeds from Iselin under which the defendants Colgate and Chieco claim is such as to restrict occupancy of any dwelling house on the premises conveyed to not more than two families. The plaintiff claims that the proposed erection and maintenance by the defendant Colgate of the apartment house on its premises and the conversion and use of the dwelling on the premises of the defendant Chieco for residence by three or more families should be restrained as in violation of the covenant. It is clear that the erection and maintenance of an apartment house upon the premises of the defendant Colgate would violate the provisions of the covenant barring the erection and maintenance of a “ tenement house ” on the property, and that the defendant Chieco’s present use of his premises for three family occupancy is in violation of the provisions of the covenant limiting the use of any dwelling thereon to two families. The defendants contend, however, that the covenant inserted in the Iselin deeds was a personal one running solely in favor of Iselin and that it is not enforeible by his grantees.
In expressing the grounds for this decision, it does not seem necessary that the covenant be here set out in full. It is true that the covenant is inartistically drawn and, as a whole, is somewhat ambiguous, but it clearly does prohibit the erection upon lands of defendants of an apartment house and the occupancy o'f a dwelling on such lands by more than two families. I do note that the covenant is stated to be by the party of the second part (the grantee from Iselin) “ and his heirs and assigns * * * to and with the said Adrian Iselin, Jr., his heirs, executors and administrators ” and that there is nothing in the wording thereof indicative of the intent that it is imposed *304 for the benefit of the assigns or grantees of said Iselin. Therefore, the plaintiff may not enforce the covenant on. the theory that she is a third-party beneficiary of the contract. (See, Hungerford v. Ocean Gardens, 283 App. Div. 797, affd. 308 N. Y. 765.)
Notwithstanding that the covenant in wording is personal to the grantor and that, therefore, the plaintiff does not have the right to maintain an action at law thereon as upon a contract made for her benefit, she may be entitled to relief in equity. If the covenant was imposed as a part of a general scheme of development of Neptune Park and in furtherance of a plan intended to benefit the entire tract, the plaintiff is entitled to the aid of equity in' enforcing the covenant. This seems to be clear. (See, 4 Pomeroy on Equity Jurisprudence [5th ed.], § 1295, p. 853.) Certain decisions in this State have granted relief to subsequent grantees on the theory that, under such circumstances, there are implied mutual negative easements for the benefit of all purchasers of land in the tract taking subject to the covenant and that a purchaser and his grantees, as owners of a dominant tenement, are entitled to the aid of a court of equity to enjoin interference with their rights. (See, Silberman v. Uhrlaub, 116 App. Div. 869; Landsberg v. Rosenwasser, 124 App. Div. 559; Trustees of Columbia Coll. v. Lynch, 70 N. Y. 440.) In any event, the Court of Appeals has expressly held that under such circumstances ‘ ‘ the covenant is enforceable by any grantee as against any other upon the theory that there is a mutuality of covenant and consideration which binds each, and gives to each the appropriate remedy.” (Korn v. Campbell, 192 N.Y. 490, 495.)
The facts and circumstances lead me to conclude that the covenant was imposed by Iselin and entered into by his grantees as part of a plan to develop and continue Neptune Park as an area for restricted residential use and to exclude therefrom tenement and multi-family houses. As heretofore noted, all the deeds from Iselin contained the covenant, except the final deed to his holding corporation, and the conveyances from such corporation were expressly made subject to the covenant. The final deed from such corporation conveying five numbered lots and an unnumbered lot contained the covenant, and, bearing in mind that Iselin and his corporation had thereby disposed of all remaining properties owned by them in the park, there would be no reason for inserting the covenant in this deed if the covenant were not intended to be part of a general plan for the protection of all lot owners. As stated in Berry on Restrictions *305 on Use of Real Property (§ 312, p. 362), “ The circumstance that the original proprietor of various parcels of land imposed a restriction in the deed to the last parcel sold by him is very cogent to prove that he did so for the benefit of previous vendees, as he had no personal interest in the covenant.”
The park has, in fact, been developed as a residence area for one and two-family homes. Every dwelling in the park was built in conformity with the covenant, and, for over 60 years, and for upwards of 30 years after Iselin and his corporation had disposed of their holdings in the park, no one has questioned the validity and the continued obligation to abide by the terms of the covenant. Individual owners in reliance upon the security of the covenant have, over the years, expended money and developed their respective properties for use as one and two-family residences. Since 1945, eight lots in the park have been improved with one-family dwellings. As it stands now, all the lots in the park are occupied by one- or two-family dwellings excepting only the Colgate property, the Chieco property and two lots which are unimproved. To hold for the defendants in this case and to open this park up to apartment houses would undoubtedly result in damage to many individual owners who have had reason to believe that the park was restricted to one- and two-family dwellings. And there is nothing in the position of defendants that has appeal to a court of equity. Concededly, they acquired their respective properties with knowledge of the covenant and of the mutual adherence over the years to the terms thereof by the owners of lots in the park. Thus, these defendants, in equity, should be bound thereby.
The defendants, by way of defense, say that there has been a change of conditions in the neighborhood whereby the enforcement of the restrictions against the use of their properties would be unjust and inequitable. However, it is clear that there has been no decided change over the years in the use of the lands within the area of Neptune Park. All of the improved lands therein are still used for one- and two-family residence purposes, that is, excepting the premises of Chieco. It does not appear to my satisfaction that any dwelling in the park, other than that owned by Chieco, is used as a residence for more than two families. There was testimony of changes in use of premises situate outside of the Neptune Park area. Several apartment houses have been erected nearby and some adjacent or within a block of the limits of the Neptune Park area, but this does not, in my opinion, justify this court’s striking down the covenant which applies solely to lands within the park. In order that an *306 alleged change in neighborhood shall be a defense to this type of action, the change must be substantial and such as to support a finding that the usefulness of the covenant has been destroyed. Equity may refuse to enforce a restrictive covenant upon the ground of change of conditions only where it is established that the change is such that the restriction has become valueless to the property of the plaintiffs and onerous to the property of defendants (see Todd v. North Ave. Holding Corp., 121 Misc. 301, 305, affd. 208 App. Div. 845), but such a change has not been established here. Particularly, I adopt the holding of Mr. Justice James C. O’Brien in the recent case of Bullock v. Steinmil Realty (1 Misc 2d 46, 49), to wit: “ The tract with which we are concerned is a fine residential tract and its character has not changed over the years, although it must be conceded smaller and lower priced homes have been built on smaller sized lots on tracts and areas adjoining it. Ordinarily where the protected area, itself, has not deteriorated, such covenant is enforcible in equity despite a change in the surrounding area. (Zipp v. Barker, [40 App. Div. 1, affd. 166 N. Y. 621] supra; Pagenstecher v. Carlson, 146 App. Div. 738.) In this case the restrictive covenant continues to be of value to the property protected and the fact that some of the territory surrounding the restricted district has changed in character does not prevent the enforcement of the restriction within the district. (Berry on Restrictions on Use of Real Property, § 411, p. 553. Trustees of Columbia College v. Thacher, 87 N. Y. 311, 319.)”
The defendant Chieco urges that plaintiff is guilty of laches barring her right to equitable relief as against said defendant. Of course, one who breaks a covenant, and then urges laches as a defense to an action to enforce it, has the burden of establishing such defense. (See Thompson v. Diller, 161 App. Div. 98, 105.) Here, the plaintiff has not, in my opinion, been guilty of unreasonable delay in bringing suit, and it does not appear that any words or action on the part of the plaintiff induced said defendant to make the conversion to a multi-family dwelling or that the defendant actually relied upon words, action or inaction of plaintiff in making the conversion. As I have heretofore had occasion to state, “ It is clear that mere delay in bringing a suit to enforce a restrictive convenant, where short of the statutory period of limitations, does not, in itself, constitute laches barring the suit. Laches constitutes an equitable defense where the delay of the plaintiff is unreasonable and has resulted in a change of the position of the defendant whereby it would be inequitable to grant the relief sought. Where, as in this case, the *307 delay has not been unreasonable and has not resulted in any prejudice to the defendants, and the plaintiffs are possessed of a clear right, laches will not be honored as a defense to equitable relief. See particularly, Spencer v. Childers, 307 Mich. 145, 11 N. W. 2d 837.” (Kiernan v. Snowden, 123 N. Y. S. 2d 895, 900. See, also, Bullock v. Steinmil Realty, 1 Misc 2d 46, supra.)
The plaintiff, however, has not established dollars and cents damages sustained to date by reason of violation of the covenant by defendant Chieco. There is diminution in value of plaintiff’s premises occasioned by continued violation of the covenant by defendant Chieco, but the plaintiff will receive adequate relief in this connection by a judgment restraining further violations. The plaintiff is, therefore, not entitled to judgment for damages. But it is well to note that proof of special damages is not essential to entitle plaintiff to injunctive relief. (See Evangelical Lutheran Church v. Sahlem, 254 N. Y. 161,166; also, Kiernan v. Snowden, supra.)
Judgment will be granted plaintiff restraining defendants as demanded in the complaint. This will stand as the decision of the court without formal findings. Plaintiff shall have one bill of taxable costs.
Settle judgment on notice.