J. Irwin Shapiro, J.
This is a consolidated nonjury action. A. J. Fleres, Inc. (Fleres) commenced an action in this court to rescind two certain agreements for the delivery of two machines manufactured for it by the defendant Larkin Welder & Machine Corporation (Larkin) and the damages allegedly sustained by it through the inefficacy in the operation of said machines.
Larkin commenced an action in the Municipal Court of the City of New York to recover on promissory notes representing the balance of the purchase price due on the two machines. In the consolidation order Fleres became the plaintiff and Larkin became the defendant.
Fleres is a manufacturer of frames for ladies’ handbags. Larkin manufactures electrical welding machines.
In December, 1959 Fleres placed an order in writing with Larkin for the manufacture of a “ welding ’ ’ machine. The machine, called a “ball to ball machine”, was supposed to “ automatically feed and weld steel balls ” of various specified sizes at a “ production rate in excess of eighty per minute ’ ’.
Fleres paid $1,500 on receiving the machine and gave a series of 12 promissory notes totaling $3,341 for the balance of the purchase price. The total price of the machine, including New York City sales tax, was $4,841. Fleres put the machine to work and shortly thereafter began to complain to Larkin that it would, when operating, weld some of the inserted balls but would eject many more without welding them, so that it became necessary for one or more workers to segregate the welded balls from the unfinished products. Fleres also complained that the machine did not eject anywhere in the neighborhood of 80 balls per minute.
Under the agreement this machine was “to be test run ” in Larkin’s factory “ before acceptance for a period of two full days” with the purchaser supplying enough “parts to keep machine operating for (2) two days ”. In addition the machine, “ with the exception of welding electrodes ” was “ fully guaranteed for one year ”. The contract was signed for Larkin by its sales engineer, John J. Vigilante. He was not called as a witness by Larkin, nor was his absence explained. He is the one who went to Fleres’ place of business to examine the machine and attempted repairs when the repeated complaints were made.
This court is entitled to and does draw 1 ‘ the natural inference ” that this “ witness was not called because he could not truthfully have contradicted the evidence offered by the other party ” (Laffin v. Ryan, 4 A D 2d 21, 25) and, therefore, draws the strongest inferences from the proof against Larkin ‘‘ which the opposing evidence in the record permits ” (Noco v. Kauf *81 man, 2 N Y 2d 347, 353). The nonproduction of a witness “ who would in the natural course of events have been called by an honest and therefore fearless party warrants the application of the [above] rule ” (Farber v. Jewish Community Center of Flatbush, 32 Misc 2d 124, 129).
Mr. Larkin, an officer of Larkin, who was called as a witness gave no testimony of any value. He was completely indefinite and ambiguous on almost every point in dispute. He could not deny that 8 boxes of balls had been given to Larkin to test the machine for 2 days; he could not recall whether the machine was tested only for a few minutes, because at the time the water connection had not yet been attached to the machine; nor was he asked whether the machine, when completed and delivered by his company, could weld these balls “ at a production rate in excess of eighty per minute In its memorandum submitted at the commencement of the trial Larkin claimed that it would prove that the machines did not work ‘ ‘ because they had been tampered with by Fleres inexperienced workmen and that also improper size balls were being used — which interfered with the welding process ”. The same memorandum also stated that ‘1 Mr. Larkin will also testify that the machines when delivered were capable of performing in accordance with Fleres specifications and that both machines were installed and operated satisfactorily on the premises of Fleres ”. No such proof was proffered at the trial. In fact, Mr. Larkin never saw the machine after it left his factory and the information that he could give about what he did see of the machine in his factory was minimal.
An expert called by Fleres testified that he took the machine to his plant where it was taken apart for the purpose of being modified and reconditioned but that he put it back together again because the inspection disclosed that it could not be put in proper working order for the price quoted by him and that a reconditioning job to make the machine work properly would cost somewhere in the neighborhood of $6,000. Even this, said the expert, would not cause the machine to eject 80 balls per minute because no one presently has the know-how to manufacture such a machine.
The expert testified that the reason he could not modify the machine and make it work was because, among other things, its construction was simply not rugged enough to do the welding job required. He explained that the reason why many of the balls were ejected without being welded was because the ejector did not accelerate consistently and the guide bar was not accurate. In addition he testified that the motor was at least 5 to 10 years old. In this connection it should be noted that about the only *82 positive testimony given by Mr. Larkin wag big admission that the -motor was indeed not a new one and his explanation for that fact was that the machine had been shipped out with the old motor through inadvertence and error, an explanation which is rejected by the court.
I credit the testimony of thg expert as to this machine and find that the machine had no functional value at and subsequent to the time of its delivery. True it i@ that it was used by Fleres for some time hut the testimony which I accept and credit makes it clear that this use was accompanied by the engagement of extra labor to segregate the finished product made necessary by the ejection of many unwelded halls. Under the circumstances Fleres; damage could well be held to be the entire amount of $2,335.26 paid by it on account of the purchase price of said machine. I have concluded, however, that, under all the circumstances, a return to Fleres of $1,100 of said sum plus interest would compensate it for its damage.
I-n view of the fact, however, that Fleres has pleaded both a cause of action in rescission and a cause of action for damages, as it now is -permitted to do (Civ. Prac. Act, § 112-e), Larkin will be given the option to accept the return of this machine upon repaying the sum of $2,335.26 heretofore received by it on account of said machine (Civ. Prac. Act, § 112-g).
Larkin is to serve and file a stipulation, within five days after this memorandum appears in the New Torh haw Journal, if it elects to accept the return of said machine, in which event the judgment to be entered will be in favor of Fleres on the canse of action for rescission, insofar as it deals with said machine, in the gum of $2,335.26, without interest.
If such stipulation is not served and filed, within the time indicated above, Fleres is to have judgment on its damage cause of action dealing with said machine in the sum of $1,100, with interest.
In addition to the purchase of the f‘ ball to ball” welding machine, which we have been discussing, Fleres also -purchased a second machine known asa,f ring to ring ? ? welding machine. The total cost of this machine was $1,776.75. This was paid for by $600 in cash and the balance by 12 promissory notes Totaling $1,170.75 upon which there is now due $1,098,28.
The expert, in dealing with this machine, testified that he repaired it at a cost of $'150. There wag no proof, however, that the $160 thus expended was occasioned by any basic defect in the machine. It is just as likely that the repairs to this machine were occasioned by its use after the one-year-guarantee period had expired.
*83 Under the circumstances, judgment will be directed in favor of Larkin and against Fleres upon the latter’s causes of action dealing with this second machine which means that Larkin will have judgment on its counterclaim for $1,098.28, plus appropriate interest representing the balance due on the purchase price of said second machine.
To sum up, if Larkin accepts the return of the ‘ ‘ ball to ball ’ ’ machine it will owe Fleres $2,335.26, less $1,098.28, plus appropriate interest on said latter sum, for which judgment may be entered in favor of Fleres. If Larkin does not file a stipulation agreeing to accept the return of the ‘1 ball to hall ’ ’ machine, there will he judgment in favor of Larkin for $1,098.28 pins appropriate interest on the second machine and judgment in favor of Fleres for $1,100, plus interest from January 25, 1960, the date when it made the first demand upon Larkin to repair or take the “ ball to hall ’ ’ machine hack.