NORMUS REALTY CORP., Respondent, *v.* FLORENCE C. DISQUE et al., Appellants, and M. A. GORDON & COMPANY, INC., et al., Respondents, et al., Defendants.

First Department, February 27, 1964.

278

*Osborne A. McKegney* of counsel (*Shanley & McKegney*, attorneys), for appellants.

*Benjamin F. Nolan*, attorney for Normus Realty Corp., respondent.

*Monroe Goldwater* of counsel (*Bernard Katz* with him on the brief; *Goldwater & Flynn*, attorneys), for M. A. Gordon & Company, Inc., and others, respondents.

*Amend & Amend*, for Franciscan Sisters of the Poor, formerly the Sisters of the Poor of St. Francis, respondent.

*Leo A. Larkin, Corporation Counsel*, for City of New York, defendant.

STEVENS, J. This is an action by plaintiff-respondent Normus Realty Corp. (herein Normus) seeking a judgment canceling and discharging as to real property owned by Normus, certain restrictive covenants affecting such property and the property of the defendants, declaring that Normus be released and discharged from such covenants, and that it has the right to erect a modern Class A multiple-dwelling house upon such premises. Normus seeks to enjoin the defendants and each of them from asserting any claim under said restrictive covenants so as to prevent such erection. The court, in granting the relief sought, concluded there had been such substantial change in the neighborhood that "the usefulness of the covenant had been destroyed and its objects and purposes [rendered] obsolete and no longer applicable ". The present appeal is taken from that determination by one group of defendants, herein referred to as appellants. There is a second group of defendants who denied certain allegations of the complaint and alleged as a contingent counterclaim the contention that if Normus is successful in the

action they are entitled to the same relief and demanded judgment therefor. They are referred to herein as respondents.

In 1954 an action similar to the present one was brought. At that time the court denied the relief sought and concluded that conditions as they then existed had not rendered the covenants obsolete. The judgment entered was unanimously affirmed, without opinion (*Normus Realty Corp.* v. *Heilbrun,* 3 A D 2d 657). The tract of land involved is located in the Spuyten Duyvil area and was conveyed in 1919 by a single instrument, subject to the restriction that only private dwelling houses for the use of a single family would be erected on the various plots into which the acreage had been divided.

Since that time there have been numerous private single-family dwellings erected and it has become a fine residential section. Within the restricted area no apartment buildings have been erected and the restrictions have been adhered to. However, all parties agree that outside of such boundaries extensive changes have taken place. What was formerly a quiet street or roadway has become the multi-lane Henry Hudson Parkway, and a number of large apartment buildings have been constructed within an eight-block area of the property. At the time of the first application in 1954, 26 such buildings had been constructed and since that time 31 more have been completed. Of this 31, only 12 are on the west side of the Parkway and only 6 within 5 blocks of the restricted area. On the west of the area is the Henry Hudson River. To the north is a proposed park site and to the south is the Frances Schervier Home. Normus' property fronts on the Henry Hudson Parkway and the residence thereon was erected in 1932, taken over in 1937 as a nursing home, and conducted as such until 1955. Normus purchased the property in 1946 with knowledge of and subject to the restrictive covenants. Normus' property has since been zoned to permit the erection of an apartment house, while the other properties remain zoned for single-family dwellings. The property is presently assessed for $100,000, a sharp increase from prior assessments. The issue to be determined is whether the changes since 1954, together with the earlier changes, have caused such differences in the character of the area as to render the covenant obsolete and inequitable.

"Equity may refuse to enforce a restrictive covenant upon the ground of change of conditions only where it is established that the change is such that the restriction has become valueless to the property of the plaintiffs and onerous to the property of defendants" (*Cummins* v. *Colgate Props. Corp.,* 2 Misc 2d 301, 306, affd. 2 A D 2d 749). "Inequity there may be in

standing on the letter of a covenant when the neighborhood has so altered that the ends to be attained by the restriction have been frustrated by the years." (*Evangelical Lutheran Church* v. *Sahlem*, 254 N. Y. 161, 167.) The burden of showing such change is upon the party attacking the covenant, in this case Normus. In support of its position Normus points out that many of the owners who themselves are subject to the restrictions have either consented to the proposed change or have not objected to it. At the hearing many owners testified that they had purchased their respective pieces of property with knowledge of the restriction, that they desired such restrictions maintained, and that one of the inducements in locating in that particular area was its fine residential character. Seven new single-family dwellings have been erected since 1954. The fact that some have consented while others opposed is not of particular benefit to the plaintiff, for unless there is something in the defendants' conduct which should banish them from equity or " something in the plaintiff's conduct, some element of mistake or misadventure or even intolerable hardship ", equity will not intervene. (*Evangelical Lutheran Church* v. *Sahlem, supra,* p. 168.) In the case cited consents had been obtained by the plaintiff from many owners living in the restricted tract, but the single defendant Sahlem refused to consent and was protected in such refusal because there was no proof that the character of the neighborhood had so changed as to defeat the object and purposes of the restrictions. Nor does the fact that apartment houses have been constructed in the surrounding streets warrant the relief sought. (*Dollard* v. *Whowell*, 174 App. Div. 403, 405. ) That portion of the agreement of 1919 with respect to the number of dwellings to be erected upon a plot of 10,000 superficial feet expired in 1933. It might be argued the common grantor envisaged a closer or more integrated community, but apartment houses remained forbidden. That contingency was contemplated by the parties who took with notice (cf. *Trustees of Columbia Coll.* v. *Thacher,* 87 N. Y. 310). While there might be some hardship upon Normus in that an apartment house would undoubtedly produce greater income and enhance the value of its plot, the fact remains that it purchased with knowledge, and no apartment buildings have as yet encroached upon the area. The purposes of the restrictions and the nature of the structures have preserved the sought-after residential character. In cases presenting such factual situations " the covenant is enforceable by any grantee as against any other upon the theory that there is a mutuality of covenant and consideration which binds each, and gives to

each the appropriate remedy. Such covenants are entered into by the grantees for their mutual protection and benefit, and the consideration therefor lies in the fact that the diminution in the value of a lot burdened with restrictions is partly or wholly offset by the enhancement in its value due to similar restrictions upon all the other lots in the same tract." (*Korn* v. *Campbell,* 192 N. Y. 490, 495.)

From the record it appears that the character of the tract involved has not changed or deteriorated so as to defeat the object and purposes for which the restrictions were imposed. Change is not necessarily suggestive or a result of deterioration. Alterations in the character of an adjacent area, or areas, of the kind shown here, are not indicia of deterioration, nor persuasive that the covenants attacked have been rendered obsolete, and the restricted area undesirable for private residences (*Pagenstecher* v. *Carlson,* 146 App. Div. 738). Accordingly, the judgment appealed from should be reversed on the law and the facts, and the complaint and counterclaims dismissed, with costs to defendants-appellants against plaintiff-respondent Normus Realty Corp. only, and without costs to defendants-respondents.

RABIN, J. (dissenting). I dissent and vote to affirm. A restrictive covenant should not be maintained "when the neighborhood has so altered that the ends to be attained by the restriction have been frustrated by the years". (*Evangelical Lutheran Church* v. *Sahlem,* 254 N. Y. 161, 167.) I find that such is the situation here.

The 1954 decision does not compel a different conclusion. The trial court in its opinion clearly recognized that there had been a substantial change in the character of the neighborhood over the years. It declined, however, to grant the relief requested only because at that time the changes were not yet of sufficient magnitude as to allow for the lifting of the restriction. However, the opinion indicated that only little more was needed to cause the court to come to a different conclusion. It seems that during the intervening period of almost 10 years there have been such additional changes as to constitute more than the proverbial "straw" necessary to break the back of the restrictive covenant. The cumulative changes made prior to, and subsequent to that decision—both within and about the restricted area—lead me to the conclusion that the neighborhood must now be considered to have been changed so radically as to render the restrictive covenant obsolete.

No longer do we have the peaceful and quiet atmosphere of a suburban area such as was contemplated by this restrictive covenant. Rather, because of the traffic and general congestion created by the newly constructed apartment houses, we have in its stead the hustle and bustle of a thickly-settled apartment-house neighborhood. The area covered by this restrictive covenant now bears little resemblance to the type of locality contemplated to be preserved by the covenant.

The court at Special Term amply and ably set forth the details which must lead to the conclusion that the restrictive covenant has become obsolete. Not the least of these are the new apartment houses now in the course of construction immediately surrounding the restricted area and the recent construction by the Frances Schervier Hospital of a garage adjoining its four-story dormitory. It should be noted that the hospital, the new garage, and the dormitory are all within the restricted area in violation of the covenant, and that the hospital property occupies more than 15% of the total area covered by the restriction. The restrictive covenant now under consideration, first recorded in 1919, has outlived its usefulness.

BREITEL, J. P., McNALLY and WITMER, JJ., concur with STEVENS, J.; RABIN, J., dissents and votes to affirm in opinion.

Judgment reversed on the law and the facts, with costs to defendants-appellants against plaintiff-respondent Normus Realty Corp. only, and without costs to defendants-respondents, and the complaint and counterclaims dismissed.

Settle order on notice.