G. Bobebt Witmeb, J.
The plaintiffs have instituted this action to enjoin the defendants Boy S. Japp and wife and Boy’s Marina, Inc., front conducting a commercial enterprise upon certain lands in Clark’s Point Subdivision, or otherwise violating alleged tract restrictions therein, and to require that they remove all structures, automobiles, boats and boat equipment erected or located on said premises in violation of said restrictions; and plaintiffs also seek judgment against said defendants and the original owners of said subdivision, the defendants Henry F. Clark and Leona H. Clark, his wife, for damages suffered by plaintiffs by reason of such violations of said restrictions.
Clark’s Point is located on the west side of Seneca Lake about 4 or 5 miles south of the City of Geneva, New York, east of a highway known as Boute No. 14. A branch of the New York Central Bailroad runs northerly and southerly, between said highway and said Point. Since it may be helpful to an understanding of the problem, a detailed description of Clark’s Point (Subdivision will be made.
The railroad passes over Wilson’s Creek which runs easterly and a little southerly from the east line of the railroad for a distance of about 600 feet to Seneca Lake. Along the west shore of Seneca Lake beginning about 100 feet north of the mouth of Wilson’s Creek are 14 cottages on lots varying in depth from 100 feet to 150 feet and in width from 55 feet to 75 feet, as shown on a map, exhibit 1, of Wilson’s Point Cottage Lots made June 15, 1928 by J. W. Brennan and filed in Ontario County Clerk’s office. Said lots skirt the Point and are numbered 1 to 14 from north to south. Said map thereof indicates that the northwesterly corner of Lot 1 thereon is about 25 feet east of the east line of the railroad property at a point over 5001 feet north of Wilson’s Creek and at a point about 175 feet southerly of an underpass under said railroad. The Clark’s Point Subdivision property with which we are particularly concerned in this action is bounded on the south by Wilson’s Creek, on the east and north by the rear of said 14 lots fronting on Seneca Lake as shown on exhibit 1 and the rear of a parcel, less than 100 feet wide, immediately south of lot 14 on exhibit *711 1, and on the west by the New York Central Railroad property. This subdivision property is over 400 feet wide on the south, over 500 feet long on the west along the east line of the railroad, and roughly 900 feet long along its east and north curved line along the rear of the 14 lots of exhibit 1.
In 1951 defendant Henry Clark had a subdivision map, exhibit 2, made of this area by Harlow H. Hartwell, a licensed engineer and surveyor, on which 24 lots were laid out. On the north bank of Wilson’s Creek, beginning at a point in line with the rear of the lakefront lots, exhibit 1, and going westerly along said bank, at least 22 so-called “ boat lots ”, each a little over 5 feet wide and 15 feet deep, were laid out. From there, west to the railroad east line, lots 19 through 24 were laid out, bounded on the south by the Creek and on the north by a roadway 25 feet wide running east and west by said lots. Where the roadway met the railroad property, it turned northerly along the railroad east line and ran, 26 feet in width, to the end of the subdivision area and continued northerly about 175 feet to the railroad underpass. A short distance north of the above turn in the roadway and approximately 400 feet south of the underpass there was a roadway across the railroad tracks which led westerly to said Route No. 14. There was also a 25-foot roadway from the east end of the above boat lots, running northerly and northwesterly along the rear of the 14 lots shown on exhibit 1, which roadway met the above-mentioned road which ran along the east line of the railroad, at a point about 175 feet from the railroad underpass. The roadway first mentioned, in front of lots 19 through 24 from the railroad line easterly, turned at right angles along the east line of lot 19 and extended 85 feet southerly to the boat lots. Its east line was the west line of lot 18. This roadway then ran easterly between the boat lots on its south side and lot 18 on its north side and connected with said north-south road running at the rear of the 14 lots, exhibit 1. Thus, lot 18 was bounded on three sides by the 25-foot roadway; and the boat lots on Wilson’s Creek were just across the roadway from it.
In August of 1951 defendant Henry F. Clark advertised in the Geneva Daily Times newspaper (Exhibits 17 and 18) a first offering of 24 lots in a subdivision of Clark’s Point, with a separate boat lot for each lot sold; and exhorted the readers that “ Here is a chance to combine low tax, permanent living with year-around comfort ’ ’. In that year defendant Clark conferred with realtor Michael J. Moses of Geneva about his new subdivision, and told him ‘ ‘ it was going to be a new subdivision for residential purposes ”. Defendants Clark also posted signs *712 in 1951 advertising Lakeside Development Lots for sale (Exhibits 19 and 20), which signs were there and were seen by plaintiffs before they bought in 1953.
In March of 1953 plaintiffs contacted defendants Clark about buying a lot in the new subdivision. There were at least three meetings: two at plaintiffs’ home in Geneva and one on the subdivision site. Mrs. Guthrie testified that defendant Henry Clark ‘ ‘ told us it was going to be a subdivision, a lovely one, with special specifications, and told us that they would have to be new homes, homes of new lumber, of no less than two bedroom construction, painted within a year, and grounds graded to the level of the road ’ ’; and she testified that he assured them that “ there would be absolutely no commercial activity in this subdivision ’ ’. Defendants showed plaintiffs the map, exhibit 2, to explain the subdivision development. They wanted to sell plaintiffs lot number 12 on which a cement slab had been laid (exhibits 7 and 16); hut plaintiffs preferred the corner lot, number 18, and contracted to buy it. In making this purchase, plaintiffs relied upon the representations of. defendants Clark as to the nature of the subdivision and its restrictions.
Defendants Clark wanted to build plaintiffs’ home on the lot, and plaintiffs agreed. Defendants Clark showed plaintiffs the boundaries and metal stakes on lot 18 and on the adjoining lot, and on lots 9 and 10 which plaintiffs bought later. Defendant H. Clark started building the house in April 1953 on lot 18. Before it was completed the deed, exhibit 3, dated June 13, 1953 was accepted by plaintiffs and recorded in Liber 541 of Deeds at page 296 on October 8, 1953. Since plaintiffs had no attorney, the Clarks’ attorney, Mr. Taylor, represented them also on the closing. The conveyance included two boat lots on Wilson’s Creek, over 10 feet wide by 15 feet long, across the 25-foot roadway from lot 18. The deed referred to the Clark’s Point Subdivision lots as the ‘ ‘ interior lots ’ ’.
The restrictions contained in the deed (Ex. 3) were read to plaintiffs at the closing. They comprised the substance of what defendants Clark promised plaintiffs. They are as follows:
“ This land is conveyed subject to the following restrictions which shall run with the land:
“ 1. A noncommercial user will apply to the land herein.
‘ ‘ 2. Any interior lots hereafter sold will have built upon them homes containing two or more bedrooms of new wood construction, and will be painted within one year of final construction.
“ 3. The grantors herein agree that the fill on the balance of the interior lots must taper off to 0 to the respective lot lines.
*713 “ 4. The boat lot to be conveyed with this house and lot and any house and lot thereafter sold will be for the use only of its owner, and restricted to the use of one boat. ”
North of the 14 lakefront lots, exhibit 1, there was a boathouse, located east of the railroad underpass, from which a small boat rental business had been conducted by defendants Clark; and in the winter of 1953 they rented it to defendant Boy S. Japp. In May 1953 plaintiffs first learned of the presence of this boathouse. It was not located in the Clark’s Point Subdivision.
For several years a few cars were parked from time to time on the subdivision property behind the lakefront houses, and plaintiffs thought that they belonged to visitors of occupants of such houses. After a few years the boat livery marina business began to grow, and particularly after 1962.
In August 1962 plaintiffs bought from defendants Clark lots 9 and 10 in the subdivision, by deed, exhibit 9. These lots lie next north of lot 18, and included therewith were two 5 feet by 15 feet boat lots on Wilson’s Creek. When the original proposed deed for said lots was handed to plaintiffs they observed that the boat lots were in an area which they understood had been granted to someone else, and they asked to have it corrected. This was done, and plaintiffs accepted the deed, but did not get around to record it until March, 1963. This deed contained the same restrictions as are in the deed to lot 18, exhibit 3, except that it contained the following additional words, 1 ‘ without obligation on the Grantor to attach the same restrictions to other land ”. No mention was made to plaintiffs that said quoted words had been added to the deed, and plaintiffs did not observe them therein until the time of this trial. Plaintiffs now claim that those words were inserted as a fraud upon them. They assert further that those words have no effect upon the terms of their deed, exhibit 3, but that in any event they should be given no effect because of the manner of their insertion, being without notice or consideration to the plaintiffs.
In December, 1964 defendants Clark sold all of the remainder of Clark’s Point Subdivision, consisting of the entire subdivision except 5 or 6 lots, to defendants Japp (Abstract of Title, Ex. A. No. 53), and did not insert in the deed the restrictions as contained in the 1953 deed to the plaintiffs, exhibit 3. That deed to defendants Japp expressly referred to and excepted each of said previously conveyed parcels, naming the grantees and the dates of the deeds and the libers and pages of their recordings, and added “ subject to easements and restrictions of record and prescriptive easements to use of roadway ”. The interior *714 area of Clark’s Point which defendants Japp bought by said deed was vacant at the time.
In addition to the record of plaintiff’s deed, exhibit 3, there was in the records of Ontario County Clerk’s office a lis pendens recorded August 4, 1951 in civil cause No. 34455 by Robert L. Beinert et al. v. defendants Clark et al., brought to enjoin defendants Clark from violating certain restrictions with respect to the Clark Point property. This lis pendens was cancelled on February 13,1953 (Abstract of Title, Ex. A. No. 38). After its cancellation and on April 3, 1953 a decision by Supreme Court Justice Lewis A. Gilbert in said action was filed in the Clerk’s office with respect to said property (Ex. A. No. 43). In finding No. 17 of said decision Justice Gilbert held that ‘ ‘ defendants Clark have laid out lots in the interior portion of the point and with said lots have laid out boat slips along Wilson’s Creek ”, and in finding No. 18 he held that “ at one time the defendant Henry F. Clark caused the right of way roadway on his land in the rear of the cottages to be scraped.”
In October, 1965 when plaintiffs returned from work one evening they found that defendants Roy S. Japp and wife and Roy’s Marina, Inc. (hereinafter referred to as defendants Japp) had erected high wooden posts or poles on lot No. 16 which was east of the roadway near the railroad tracks and opposite the roadway which crosses the tracks and leads to and from Route No. 14. The plaintiffs promptly contacted defendant Roy Japp and reminded him of the restrictions upon the property and asked him to remove the posts. He replied that he would rather buy the plaintiffs’ property than give up his proposed commercial marina venture in the area, which he intended to expand; and he proceeded to complete construction of the pole barn for housing boats (Ex. 12).
The marina business activity has increased greatly since then, including the parking of automobiles, boats and boat carriers all over the area (Exhibits 10, 13 and 14). The erection of the pole barn by defendants Japp in 1965 was plaintiffs’ first notice that said defendants intended to use the area for commercial purposes.
Since defendants Japp did not desist from using the area commercially, plaintiffs prepared to bring this action. Their attorney called upon the attorneys for defendants Japp and found that said attorneys had in their possession the map of Clark’s Point Subdivision, exhibit 2. He testified that said attorneys represented defendants Japp as well as the mortgagee on the purchase of said property by the Japps. Although one of the attorneys for defendants Japp urged that he did not know *715 whether his law firm examined the title for defendants Japp or the mortgagee or both at the time of the Japp purchase, defendants Japp were in court and declined to testify; except that Mrs. Japp testified briefly as to when they first went to the Clark’s Point area, in 1953, and that she does not remember seeing the signs about the development and lots for sale there. Their failure thus to speak concerning what attorney represented them on the purchase and to deny that their present attorneys represented them, when knowledge of that matter was peculiarly within their control, entitles the plaintiffs to have the fullest weight given to the evidence presented by them for the proposition that the present attorneys for defendants Japp also represented said defendants on that closing. (Dowling v. Hastings, 211 N. Y. 199, 202; Fleres, Inc. v. Larkin Welder, 36 Misc 2d 79; Salter v. Havivi, 30 Misc 2d 251, 257-258). Upon that evidence I find that the present attorneys for defendants Japp did represent them on the purchase of said Clark’s Point Subdivision residue, and that defendants Japp are chargeable with the knowledge of said attorneys of the existence of said subdivision.
The first substantial question of law herein is whether the transaction between the plaintiffs and defendants Clark in 1953 created restrictions on the remainder of the defendant Clarks’ subdivision lands at Clark’s Point. The first rule of law in this regard is that a covenant restricting the use of land will be construed strictly against the grantor who imposed it, but where the covenant is capable of two constructions, the one limiting the scope of the restriction will be adopted (Single v. Whitmore, 307 N. Y. 575). Moreover, where a covenant restricts a grantee but does not purport to restrict the grantor, it will be held that the grantor’s remaining lands are not subject to the restriction (Bristol v. Woodward, 251 N. Y. 275).
The restriction provisions in the 1953 deed, quoted above, specify restrictions on the land then conveyed to the plaintiffs and also provide in Item 2 that “ any interior lots hereafter sold will have built upon them homes ”, etc. and in Item 3 that “ The grantors herein agree that the fill on the balance of the interior lots must taper off ”, etc., and in Item 4 that “ any house and lot thereafter sold will be for the use only of its owner ’ ’, etc. These items clearly show an intention on the part of the parties to place restrictions upon the lands conveyed and also upon the lots retained by defendants Clark; and in particular, Item 2, fairly construed, restricts the subdivision to residential use.
*716 Furthermore, it is apparent that the defendants Clark and their attorneys thought the above to be the fair construction of such deed, because in the 1962 deed to the plaintiffs of lots 9 and 10, exhibit 9, they unilaterally sought to change such meaning by adding thereto the words ‘ ‘ without obligation on the Grantor to attach the same restrictions to other land ”. (See 4 Warren’s Weed New York Real Property [4th ed.], § 9.03, p. 813.) Those words were added without the knowledge or agreement of the plaintiffs; and may not be held to bind the plaintiffs as against defendants Clark. The plaintiffs were still entitled to rely upon the representation which defendants Clark had made to them in 1953 and had incorporated in the 1953 deed, exhibit 3 (see White v. La Due & Fitch, Inc., 303 N. Y. 122, 127).
Apart, however, from the direct construction of exhibit 3, defendants Clark are bound by the restrictions because of their creation of a subdivision under a general plan of residential development. That they did so is patent from the evidence above referred to, including their preparation of the subdivision map, exhibit 2, the 1951 advertisements in the Geneva newspaper, exhibits 17 and 18, the conversations with realtor Moses as to their intentions with respect to the area, the “ For Sale ” signs which they posted (Exhibits 19 and 20), and sales talk to the plaintiffs in 1953, using exhibit 2 and showing plaintiffs the boundary stakes of various lots in the tract and that one house had been started by the laying of a cement slab (Ex. 7). Such common plan is sufficient to establish that the restrictions were meant to be and are binding upon all lots in the subdivision. (Cummins v. Colgate Props. Corp., 2 Misc 2d 301, 304 [Eager, J.], affd. 2 A D 2d 749, mot. for lv. to app. den. 2 N Y 2d 707; Korn v. Campbell, 192 N. Y. 490, 495 ; 5 Powell, Real Property, § 679; 13 N. Y. Jur., Covenants and Restrictions, §§ 67, 116; and cf. Steinmann v. Silverman, 14 N Y 2d 243 and White v. La Due & Fitch, Inc., 303 N. Y. 122, supra.)
In addition, the evidence establishes that defendants Clark represented to the plaintiffs that the whole tract would be restricted to residential use. Even if such oral representations exceeded the terms of the deed restrictions, the representations would be effective against defendants Clark (Bristol v. Woodward, 251 N. Y. 275, 287-289, supra; Lewis v. Gollner, 129 N. Y. 227; 4 Warren’s Weed, New York Real Property [4th ed.], § 9.04, p. 814).
Thus beyond question, defendants Clark are bound by the restrictions which I find were imposed by them on all the lots of their Clark’s Point Subdivision, exhibit 2. The question *717 remains whether defendants Japp had knowledge of said restrictions, actual or constructive, so as likewise to be bound thereby.
Defendants Japp operated their marina nearby in a small way for over 10 years before they bought the remainder of the subdivision lands from defendants Clark in December, 1964. It is most likely that in this rural area they were fully cognizant of the existence of the subdivision and of defendants Clarks’ sales and efforts to sell. Apparently, however, the plaintiffs had no examination before trial of defendants Japp, and they produced no evidence that the latter, personally, had actual knowledge of the subdivision and restrictions, except that they drove by the development signs which the Clarks had posted.
Plaintiffs have, however, established that the attorneys for defendants Japp had actual knowledge of the existence of subdivision map exhibit 2, of the plaintiffs’ ownership of lot 18 thereon, and of certain facts revealed to them from their examination of Japps’ Abstract of Title, exhibit 24; and such knowledge is imputed to defendants Japp, and they are hence chargeable with actual knowledge of this subdivision and the tract restrictions (Rubel Bros. v. Dumont Coal & Ice Co., 200 App. Div. 135; 4 Warren’s Weed, New York Real Property [4th ed.], §§ 9.02, 16.17, pp. 813, 855).
The plaintiffs have, moreover, established that defendants Japp had constructive notice of the existence of the subdivision and of the restrictions in plaintiffs’ deed, exhibit 3. Upon the record with respect to these lots which defendants Japp bought from defendants Clark, were the findings of Mr. Justice Gilbert of 1952, above referred to, that defendants Clark had laid out lots in the interior portion of Clark’s Point and had scraped the roadway therein, the latter showing his maintenance thereof. (Ex. A. No. 43.) In addition, the deed which defendants Japp received from defendants Clark expressly referred to'the plaintiffs’ deed, exhibit 3, and added that the conveyance was “ subject to easements and restrictions of record ”, etc. This was sufficient notice to them of the existence of the restrictions (Bird v. Salt Hill Corp., 282 App. Div. 1047, affd. 2 N Y 2d 1000; Holt v. Fleischman, 75 App. Div. 593, 599; Whistler v. Cole, 81 Misc. 519, affd. 162 App. Div. 920; Hart v. Little, 103 Misc. 620, 622 ; 4 Warren’s Weed, New York Real Property [4th ed.], §§ 2.05 and 8.02, pp. 726, 811; 13 N. Y. Jur., Covenants and Restrictions, § 120, and see Hodge v. Sloan, 107 N. Y. 244; Cambridge Val. Bank v. Delano, 48 N. Y. 326; and Simmons v. Crisfield, 123 App. Div. 201, affd. 197 N. Y. 365), the terms of which *718 are herein held sufficient to limit the subdivision to residential use.
Defendants’ contention that plaintiffs should be barred by laches is completely without merit. They acted as soon as any reasonable person would under the circumstances. (See Cummins v. Colgate Props. Corp., 2 Misc 2d 301, 306, affd. 2 A D 2d 749, mot. for lv. to app. den. 2 N Y 2d 707, supra.)
It might be argued that the 1962 deed (Ex. 9) from defendants Clark to plaintiffs which expressly relieved the Clarks from the obligation “ to attach the same restrictions to other land ”, lulled defendants Japp into the belief that there were no restrictions on the remainder of the tract. But the 1953 deed to the plaintiffs (Ex. 3) contained the tract restrictions in plaintiffs’ favor, and the 1962 deed (Ex. 9) was not signed by the plaintiffs and did not purport to release the Clarks from their obligations with respect to lot 18 as contained in the 1953 deed; and defendants Japp, through their attorneys, were bound to know that, and were at the very least bound to investigate the meaning and effect of such clause in exhibit 9.
Plaintiffs are, therefore, entitled to judgment enjoining the defendants Japp from continuing to use any part of said Clark’s Point Subdivision for commercial purposes, and providing that the defendants Japp be required forthwith to remove from said premises the pole barn and all personal property used in connection therewith or in connection with the marina business.
The evidence of the monetary damage sustained by the plaintiffs by reason of the defendants’ violation of the tract restrictions is not satisfactory. Moreover, upon the discontinuance of the commercial use and the removal of the pole barn as herein ordered, plaintiffs’ position will be restored to its status in early 1965. Plaintiffs’ claim for such loss to the time of trial in October, 1967 is, therefore, dismissed. This decision is without prejudice, however, to plaintiffs’ rights to demand damages against all defendants from October, 1967 onward, in the event that defendants Japp fail to comply promptly with the judgment to be entered hereon.
Costs are awarded to plaintiffs against all defendants. (Cummins v. Colgate Props. Corp., 2 Misc 2d 301, 307, affd. 2 A D 2d 749, supra.)
Defendants’ motions to dismiss, as to which decision was reserved, are denied.
This memorandum is the decision of the court under CPLB 4213.