Mario Pittoni, J.
The plaintiffs have brought this action against their next door neighbors, the defendants, for a judgment enjoining and restraining the defendants from erecting a fence between their properties, and directing them to remove the fence now erected thereon.
It appears that on July 27,1950, Grizzly Park Corporation, a builder and developer (hereinafter called the Company), executed a declaration for a certain area called “ Roslyn Country Club ”. This declaration was duly recorded in the office of the County Clerk of Nassau County on August 8,1950. Among its provisions the declaration stated:
“ Whereas, it is the Company’s intention that the aforesaid land shall be developed as a planned suburban community of one family houses; Now therefore, the Company declares that the aforesaid land is held and shall be conveyed by it subject to the following covenants, restrictions and conditions which shall run with the land until January 1, 1975; * * * Third: All fences, whether fabricated or growing, are prohibited. *990 * * * Eleventh: The Company, its successors and assigns, whether or not owning any part of the aforesaid land, shall have the right to add to, alter, modify or annul any of the covenants, restrictions and conditions of the Declaration. * * * Twelfth: This Declaration shall be binding upon, enure to the benefit of, and be enforcible by the Company, its successors and assigns, and * * * any owner or owners of any part of the aforesaid land ”.
Thereafter, on October 6, 1950, the Company deeded the properties involved, lot number 9 to the plaintiffs and lot number 10 to the defendants. Both properties were located in the area covered by the declaration. Each deed had the very same paragraph: “ Subject to covenants and restrictions of record ”.
In the Summer of 1957 the defendants began to build a swimming pool and erected a frontier type fence 6 feet high around the rear property surrounding the pool. In fact this fence is on the outer edge of the rear part of the defendants ’ property, and is more than enough to form a protective enclosure against the dangers of an open swimming pool.
The defendants have also built another enclosure, 38 feet by 29% feet, made of a 4-foot high frontier type fence which starts from the pool enclosure, at the defendants ’ rear house line, goes between their properties to the defendants’ front house line, and over to the defendants’ house. At the trial there was a dispute as to the purpose and use of this enclosure. The defendants said it was for their grandchildren when they visited. The plaintiffs said it was used by the defendants as a run for two dogs, and that the defendants had admitted this purpose.
The defendants also built a 4-foot frontier type fence to separate further theirs from the plaintiffs’ property. It starts from the 38 by 29%-foot enclosure at their front house line, separates their two front properties, and goes all the way to the street, i.e., Sherwood Lane.
For the purpose of this decision we shall not concern ourselves with the enclosure around the swimming pool. Such an enclosure was required by the Town of North Hempstead as a condition for permission to build the pool. Whether such a condition without the sanction of an ordinance could take precedence over the covenants and restrictions of record in this case does not have to be decided. However, such a condition for the safety and welfare of the public should take precedence over covenants or restrictions meant merely to retain the beauty of the area. Be that as it may, the plaintiffs have withdrawn their request in respect to this enclosure. They concede the safety importance of the enclosure around the swimming pool.
*991 We must still consider the smaller side enclosure and the fence to the street between the defendants’ and the plaintiffs’ properties.
The court, with the consent of both parties, has inspected the premises and area involved. It has found the area built up with many beautiful, one-story homes on wide, unobstructed plots. In this area of over one hundred homes, the court observed approximately one dozen plots upon which could be found violations of paragraph Third of the declaration. In some cases there were 3-foot split rail fences, some of which were used to support flowers and other plants, and some to separate or act as buffers. At least three were frontier-type fences. On Sherwood Lane, the street upon which the litigants’ properties front, two other properties had fences. One was on the same side of the street as the litigants ’ properties but down at the opposite corner. This fence did not separate the adjoining front lawns. Another, across the street from the plaintiffs, was a small enclosure made of a 3-foot, white painted, baslcetweave type board fence that supported some plants. Again, this did not in any way separate the front lawns. Be that as it may, these “ violations ” of paragraph Third of the declaration are not substantial enough to overcome the general plan or scheme for uniform development or to constitute a change in circumstances. Furthermore, the enclosure at the side of the defendants’ house and the separating fence that runs down to Sherwood Lane breaks the wide open front lawn beauty of this charming area.
The general rule is well settled that where the owner of a tract of land subdivides it, sells parcels thereof to separate grantees, and imposes restrictions in accordance with a general plan or scheme for uniform development, such restrictions may be enforced by one of the grantees against any other grantee on the theory that there is a mutuality of covenant and consideration which binds each and gives to each the appropriate remedy. ‘1 Such covenants are entered into by the grantees for their mutual protection and benefit, and the consideration therefor lies in the fact that the diminution in the value of a lot burdened with restrictions is partly or wholly offset by the enhancement in its value due to similar restrictions upon all other lots in the same tract”. (Korn v. Campbell, 192 N. Y. 490, 495 [1908].)
A covenant restricting use of land, at times referred to as a negative easement, is sometimes for the benefit of the grantor personally and sometimes for the benefit of successive lot owners, Whether it is of the one class or the other is a question of *992 intention which is to be gathered not merely from the language of an instrument but from all the surrounding circumstances. (Booth v. Knipe, 225 N. Y. 390, 396 [1919].) The crucial factor stressed in each case in which grantees have been permitted to proceed against each other in the enforcement of such restrictive covenants is the existence of a general plan or scheme for uniform development. This, in turn, is dependent upon an intention to establish the restriction for the benefit of the party suing. Of this right the defendant must have either actual or constructive notice. (Equitable Life Assur. Soc. v. Brennan, 148 N. Y. 661, 672 [1896]; Vogeler v. Alwyn Improvement Corp., 247 N. Y. 131, 135 [1928]; Silberman v. Uhrlaub, 116 App. Div. 869 [2d Dept., 1907]; McDougall v. Schneider, 134 App. Div. 208 [2d Dept., 1909]; Thompson v. Diller, 161 App. Div. 98 [2d Dept., 1914]; Cummins v. Colgate Properties Corp., 2 Misc 2d 301 [1956], affd. 2 A D 2d 749 [2d Dept., 1956].)
A consideration of the facts presented at this trial and of the surrounding circumstances leads to the conclusion that the covenant in issue was not exacted by the common grantor for its own benefit, but was imposed to protect those who might later become separate owners of parts of the tract in accordance with a general plan or scheme for uniform development. In turn, it can be presumed that the several grantees purchased in reliance upon the common scheme, and that they might not have purchased except upon this assurance. Selling and conveying lots under such circumstances and with such assurances bound the common grantor in equity and good conscience to use and dispose of all the remaining lots so that the assurances upon which the plaintiffs and others bought their lots would be fulfilled. (Tallmadge v. East Riv. Bank, 26 N. Y. 105, 109 [1862].)
Much emphasis is placed by the defendants upon that portion of the declaration of restriction which reserves to the common grantor the right to add to, alter, modify or annul the restrictive covenants. Indeed, there has developed a line of cases which decided that the reservation of such a right makes the covenant personal to the common grantor and therefore not available to his grantees. (Brighton By The Sea v. Rivkin, 201 App. Div. 726 [1922]; Rose v. Jasmina Realty Corp., 218 App. Div. 646 [1926]; Shaddock v. Walters, 55 N. Y. S. 2d 635 [1945]; Ludlum v. Haskins, 177 Misc. 103 [1941], mod. 263 App. Div. 741 [1941]; affd. 291 N. Y. 811 [1944]; One & Three William St. Bldg. Corp. v. Gardens Corp., 232 App. Div. 58 [1931], affd. 261 N. Y. 575 [1933]; Lugg v. Stirnweis, 43 N. Y. S. 2d 475 [1943]; Lawrence v. Brockelman, 4 Misc 2d 194 [1956]; Kew Gardens Corp. v. Ciro’s Plaza, 261 App. Div. 576 [1941].) These cases *993 rely upon that portion of Korn v. Campbell (192 N. Y. 490, supra) which states that where a grantor exacts a covenant from the grantee for the benefit and protection of contiguous or neighboring lands which the former retains, the grantees cannot enforce the covenant against each other.
To begin with, the covenant in the case at hand was obviously not exacted by the common grantor for its own benefit, but to protect those who might later become the separate owners of parts of the tract. The common grantor has retained no contiguous or neighboring lands for the benefit of which the covenant was imposed.
Brighton By The Sea v. Rivkin (201 App. Div. 726, supra) the case most frequently cited for the contention advanced by the defendants, was an appeal from an order granting an injunction pendente lite in a suit brought by the developer. It is significant to note that in reversing the order, the Appellate Division observed that the covenant was evidently exacted for the protection of contiguous or neighboring land which the ov:ner retained. There was no uniform, plan of development under beneficial restriction. In addition, the court indicated that the question whether a court of equity should decree specific performance of the covenant and an injunction should be reserved for the trial where a full disclosure could be made of all the facts for the court’s determination. It seems that notwithstanding the reservation of the right to add to, alter, modify or annul the restrictive covenant, the court recognized the availability of a remedy, but declined to grant it in the absence of any showing in the record warranting the exercise of a discretionary power. In this connection it is also significant that in Korn v. Campbell (supra) the Court of Appeals, at page 498, stated that: “ We do not mean to intimate that special circumstances may not exist in which a case not within the three classes above referred to may present considerations which would justify the enforcement of such a covenant in a court of equity. ’ ’
In Kew Gardens Corp. v. Ciro’s Plaza (261 App. Div. 576, supra) although the court apparently relied on the Rivldn case, it is evident that the real basis for the decision denying specific performance of the covenant was a change in circumstances and waiver.
In Rose v. Jasmina Corp. (218 App. Div. 646, supra) another oft-cited case, the marketability of a title was in issue. In deciding that a restrictive covenant was personal to the grantorcovenantee, the court emphasized the fact of retention by the *994 grantor of a part of the tract in his possession, a factor not present here. In addition, the court stated, at page 650:
‘ ‘ But in the agreed statement of facts it is not stated that the property known as Beverly Square was conveyed to separate owners by deeds containing restrictive covenants for their mutual benefit. The restrictive covenant reserved to * * * the grantor * * * the right ‘ to grant the right to use for all purposes all of ’ such lots. This is consistent with but one assumption, i.e., that the covenant was not for the benefit of other grantees, but for the grantor’s benefit only. A covenant which the grantor may cancel at will cannot be for the benefit of any one but him.
Nor is there anything in the agreed statement of facts or anywhere else in the record, to show that Burke, the original grantee, did sell part of the tract to others * * *. So far as the record shows, the restrictions were imposed for the benefit of Burke, or for the benefit of the land that remained to him after he parted with title to the lots in question.” (Italics supplied.)
In Shaddock v. Walters (55 N. Y. S. 2d 635, 637, supra) the emphasis was again placed upon the factor of retention of land by the grantor: “Where restrictions are for the sole benefit of land retained by a grantor, the grantees cannot enforce them one against another. The grantor alone has the power of enforcement. ’ ’
In Lugg v. Stirnweis (43 N. Y. S. 2d 475, supra) and Lawrence v. Brockelman (4 Misc 2d 194, supra) the grantor-covenantee actually exercised his reserved right to modify the restriction.
In Elliston v. Reacher ([1908] 2 Ch. 665) a restrictive covenant provided that, “ On no lot shall any hotel, tavern, public-house or beer-house be built, or any house be used as such, or any manufacture carried on, without the consent of the vendors.” The vendors reserved a power of sanctioning a hotel, tavern, public-house, beer-house, or manufactory upon any lot, and also a power as to any portion of the estate not disposed of, to deal with the same without reference to and independently of the restrictions. In affirming the granting of an injunction to one grantee against another, Cozens-Hardy, M. R, stated, at page 672: “it is said that the whole scheme is inconsistent and cannot have been intended, because there was a power in the vendor to deal with property undisposed of without reference to this deed. * * * So far as 1 am aware it is an argument that has never prevailed. I do not deny that the insertion of such a power is an element to be considered, but out of *995 many building schemes which I have seen I think I am right in this remark, that it is altogether exceptional not to see some power reserved to the vendor to abstract certain property from the scheme. On the face of the scheme, which all the parties were content with, they were told that they entered into this building scheme with the knowledge that the vendors might, if they were so advised, on the one hand give consent to the erection of a public-house next door to the man who bought a lot, and on the other hand release any unsold property from the covenants. 1 cannot see that that has any real importance in the case.”
In a concurring opinion, Farwell, L. J., stated, at page 674: “ There is no doubt that the defendants’ predecessor in title, and all the subsequent purchasers who have since bought, bought subject to the scheme and covenanted that they would abide by these covenants in the deed. * * * it [is] one element to consider and assist the Court in arriving at the conclusion of fact whether there was or was not a scheme, and nothing more than that. ’ ’
Elliston v. Reacher (supra) was cited favorably in Booth v. Knipe (225 N. Y. 390 [1919], supra). (See, also, Kempner v. Simon, 119 Misc. 60 [1922], affd. 209 App. Div. 813 [1924].)
The correct rule appears to be that the reservation of a power in the common grantor to waive or vary conditions may be considered as a factor in determining as a matter of fact whether there was a general plan or scheme for uniform development in the particular case. If it appears that there was such a plan or scheme, and the consent of the common grantor has not been given to a modification of the restrictive covenant, a grantee may have remedy against another grantee to enforce the restrictive covenant.
In a number of the above cases frequent reference is made to the concept of mutuality. A good statement is found in Trustees of Columbia Coll. v. Lynch (70 N. Y. 440, 445 [1877]) where the court said: “ Equality is not the essence of mutuality. It suffices that some promise or covenant has been made or some right given up; and the adequacy of the same as a consideration to support the undertaking of the other party * * * is for the parties to determine. A covenant is well supported in law and in equity by any consideration, however slight.”
Here the two parties involved received their deeds from the common grantor-covenantee on the same day, October 6, 1951, for adjoining parcels of land. They knowingly took subject to the restrictive covenants which were for their benefits. They *996 assented to the benefits and they assented to the burdens. Then, too, for seven years each has received the benefits of the restrictive covenant here involved. The common grantor-covenaniee has not exercised its alleged right “ to add to, alter, modify or annul”. Under the circumstances the court finds mutuality sufficient to support the restrictive covenant involved herein.
Upon the evidence adduced at the trial and upon the court’s view of the premises and area involved, the court concludes that the proper and equitable solution of the problem herein is as follows:
The defendants are directed to remove so much of the 4-foot fence connected to the pool enclosure and to their house as tends to form the 38 x 29%-foot enclosure. They are also directed to remove the 4-foot fence that divides the litigants’ front lawns and runs to Sherwood Lane. In other words, the fences which do not constitute the enclosure surrounding the swimming pool must be removed. Furthermore, the defendants are enjoined from erecting or maintaining any such fence or fences in the future.
This is the decision of the court pursuant to section 440 of the Civil Practice Act.
Settle judgment on notice.