Samuel W. Eager, J.
Plaintiff brings this action pursuant to article 15 of the Real Property Law, seeking an adjudication that certain real property which it owns is free and clear of the encumbrance of certain restrictive covenants; and on this motion, plaintiff seeks summary judgment pursuant to rule 113 of the Rules of Civil Practice. Inasmuch as the material facts clearly appear to be undisputed, the court may, upon the motion here, summarily direct judgment herein.
There were three adjacent parcels of real property in which the parties were or are interested. Prior to November, 1946 one of these parcels was conveyed to defendant Perlman by one Isadore Seven, and the other two parcels were conveyed to the defendant Country Club Properties, Inc., a stock corporation, *804 by a different grantor, one Aileen Webb. By deed dated November 1,1946, recorded November 27,1946, the defendant Country Club Properties conveyed one of its two parcels (the subject premises) to plaintiff, Lakeshore Club, Inc., which is a membership corporation. Said parcel conveyed to plaintiff fronts on the shore of Lake Mahopac in Putnam County, and was improved with a clubhouse containing a restaurant • and bar. Simultaneously with the conveyance of such parcel to plaintiff Lakeshore Club, it entere'd into an agreement with defendant, dated November 1, 1946, and recorded November 27, 1946, wherein and whereby the premises conveyed to plaintiff were designated as the “ Club Property ” and wherein and whereby it was “ mutually agreed ” among other things, that “ with the exception of the use of the premises as a public restaurant and bar, the same or any part thereof shall not be used for the conduct of business of any character or description, or as a hotel, boarding or rooming house, tourist house, public bathing pavilion, store or stores, office or offices, multi-family dwelling, shop or shops, garage, factory, boat livery, stables, pound, hospital, clinic or sanitarium, or for any industrial or commercial use. Nothing herein contained shall prohibit or be construed to prohibit the use of the premises as a one- or two-family residence, a clubhouse and for club facilities for a club in which membership is limited to persons residing within the vicinity of Lake Mahopac and who are regular dues-paying members, nor for its use as a place for religious worship nor for the use as a restaurant and bar which latter use need not be confined to club members but may be for use by the general public.”
The agreement contained further covenants as to fencing, landscaping, restricting place of maintenance on premises of a dance pavilion and children’s camp, and restricting nature and place of maintenance of signs.
There was the express provision that ‘ ‘ First Party ’ ’, Country Club Properties, Inc., ‘ ‘ reserves to itself and/or its agents, successors or assigns, and is hereby granted the right to alter, modify or annul any of the restrictions, reservations, conditions, covenants, easements and charges granted by this instrument * * * provided such alteration or modification shall not make the said provisions more restrictive ”.
The agreement also expressly provided that 1 ‘ all of the restrictions, reservations, conditions, covenants, easements, charges and agreements ’ ’ should ‘ ‘ run with the land affected and shall be binding upon and inure to the benefit of all of the present and subsequent owners thereof.” There was further *805 provision that “First Party ”, Country Club Properties, Inc., ‘ ‘ its agents, successors and assigns, in addition to such other rights as the First Party may have either at law or in equity,” should have the right to re-enter the premises conveyed in the event of violation of the said restrictions by the plaintiff and abate and remove any violating condition; and it was further provided, that the provisions thereof “ shall inure to and be binding upon, apply to, and be enforceable by any party hereto, its agents, successors or assigns, or any party entitled to the benefits hereof.”
By express provisions of the agreement, the defendant Perl-man (who did not execute the agreement as a party), or his assignee if a member of his immediate family, was given until January 1,1957 an option to purchase under certain conditions, the subject premises free of the covenants and restrictions. Such option, however, has expired without being exercised.
The conveyance of the subject premises to plaintiff Lakeshore Club expressly provided that it was “ subject to the said agreement to be recorded simultaneously with the conveyance.” Under the circumstances, there is no question but that the agreement was valid and binding upon plaintiff Lakeshore Club, and it did effectually impose valid restrictions with respect to the use of the subject premises acquired by it. Acceptance of title to the land subject to the restrictive covenants imposed upon the grantee Lakeshore Club a,n obligation which a court of equity may enforce against it and subsequent owners of the subject premises. (Vogeler v. Alwyn Improvement Corp., 247 N. Y. 131, 135.)
In imposing the restrictions with respect to the subject premises, it is to be assumed that the parties, among other things, had in mind the protection of the parcel still held by Country Club Properties and Perlman’s parcel, that is, for the benefit of the corporation, and of Perlman and' the members of his immediate family. The parcel still held by the corporation, though unimproved except for tennis courts thereon, was a lot with a 51-foot frontage on Lake Mahopac and extended therefrom to a depth of over 200 feet. It was contiguous to the subject premises and adjoining this lot was the parcel (a lake front parcel also) which was owned and used by Perlman for residence purposes. His said residence parcel was separated from the subject premises only by the 51-foot lot. Perlman was a principal stockholder and officer of the Country Club Properties, which was a family corporation. He had negotiated the sale of the subject premises to Lakeshore Club with the said 1946 agree *806 ment; and the president of the Country Club Properties who signed the agreement was Perlman’s father-in-law. Undoubtedly, Perlman intended to hold title in the corporation to the 51-foot lake front lot for use or sale of the same with his adjoining residence property. And, the restrictions imposed by the agreement were such as would protect and benefit the 51-foot lot and of the Perlman residence parcel. Furthermore, the agreement expressly provided that its provisions ‘1 are applicable to Abram M. Perlman and/or any member or members of his immediate family * * * and likewise enforceable by any of the aforementioned.” Under the circumstances, it is clear that the agreement was exacted on the sale of the subject premises for the protection of the nearby lands in which the corporation and Perlman were interested. See Post v. Weil (115 N. Y. 361, 372) where the court said that “where a restriction is inserted in a deed against undesirable structures or trades [the presumption] is that the insertion was for the purpose of protecting rights, which the grantor had in adjacent property.”
The parcel remaining in the ownership of the defendant Country Club Properties following the conveyance of the one parcel to Lakeshore Club, to wit, the 51-foot lake front lot, was conveyed in 1948 by it to defendant Perlman, and, thereupon, Perl-man immediately conveyed said lot and also his adjoining residence parcel to the defendant Labowitz. Questions thus presented are (1) whether or not the defendant Country Club Properties, by virtue of the conveyance of its remaining lands, did thereby divest itself of all rights under the restrictive covenants affecting the subject premises; (2) whether or. not the defendant Perlman, following the conveyance of his benefited lands, has any rights under the 1946 agreement surviving the conveyance; and (3) whether or not the defendant Labowitz, as grantee, is entitled to the protection of the covenants and restrictions. The answer to these questions depends upon the construction and effect of the provisions of the 1946 agreement, to be determined in light of the intention of the parties as such intention is revealed by the provisions of the agreement and the surrounding facts and circumstances. (Booth v. Knipe, 225 N. Y. 390, 396; Post v. Weil, 115 N. Y. 361, 373, supra; Pulitzer v. Campbell, 146 Misc. 700; Goldberg v. Paul, 14 Misc 2d 988, 991-992.) In the final analysis, the determination of the operation and effect of the agreement should rest ‘ ‘ upon the application of good sense and sound equity to the object and spirit ” of the agreement. (4 Kents’ Comm. 132, 133, quoted from Pulitzer v. Campbell, supra, p. 704.)

*807
(1) Did Country Club Properties, by virtue of the conveyance of its remaining lands, divest itself of all rights under the restrictive covenantsf?

Now, it is concluded that the parties did not agree upon and impose the covenants and restrictions solely with the intention of protecting the neighboring lands owned by the Country Club Properties and by Perlman, but that the parties did intend that the covenants were also to exist as personal covenants with and to Country Club Properties independent of its interest in the adjoining lot and independent of the rights of Perlman and the members of his family. The provisions of the agreement as a whole and the surrounding facts and circumstances confirm this. In this connection, one is to bear in mind that the stockholders of Country Club Properties, with which the agreement was made, were Perlman and members of his family and that they were interested generally in Lake Mahopac, and the community and lands in the vicinity. By means of the agreement, the corporation and its stockholders retained the right to prevent the use of the subject premises in a manner deemed undesirable not only with respect to their neighboring lands but also to the community, and it is concluded that this was a right intended to be reserved in the corporation under the control of it and its stockholders. Particularly significant is the provision in the agreement that the corporation and it alone reserved the right to alter, modify or annul the covenants and restrictions. A covenant which the grantor may cancel at will is to be considered as having been made for his benefit. (Rose v. Jasima Realty Corp., 218 App. Div. 646. Also, see cases cited in Goldberg v. Paul, 14 Misc 2d 988, 992, supra.)

(2) Does the defendant Perlman, after having conveyed Ms lands, have any rights under the 1946 agreement which have survived the conveyancef

It is further concluded that the defendant Perlman and members of his family, did not, by virtue of the 1946 agreement, become individually and personally vested with any rights under the covenants and restrictions agreed upon, that is, independent from the ownership and use by them of the Perlman residence parcel. It is clear that, “ One who imposes a restriction upon buyers of his land may have in mind benefit to himself, or benefit to others ” (Bristol v. Woodward, 251 N. Y. 275, 284), or the benefit of himself and others; and may intend and limit the extent and scope of the benefit and rights of others.
The 1946 agreement and covenants therein, were made with the corporation, Country Club Properties, and not with Perlman. The corporation reserved the right to alter or annul the cov *808 enants and restrictions, and could do so without action or consent by Perlman. True, the agreement did provide that Perlman and the members of his immediate family were to have the right to enforce the covenants and restrictions and, therefore, they would have the rights of third-party beneficiaries thereunder (see Vogeler v. Alwyn Improvement Corp., 247 N. Y. 131, 137, supra), but it is clear that their rights in this connection existed solely for the purpose of protecting them in their enjoyment of their residence property. Perlman was not given a personal and a permanent right as an individual to have the covenants and restrictions lived up to.
Under the circumstances, when Perlman in 1948 conveyed to Labowitz all of his estate and rights to the neighboring lands owned by him and intended to be protected by the covenants and restrictions, such rights that he had by virtue thereof did terminate. (See Treadwell v. Inslee, 120 N. Y. 458; Neponsit Property Owners Assn. v. Emigrant Ind. Sav. Bank, 278 N. Y. 248, 261.) True, simultaneously with the conveyance to Labowitz, Perlman took back a purchase-money mortgage which is still open, but he would not thereby retain an interest in the covenants and restrictions. As a holder of a mortgage from Labowitz, he was possessed thereunder of only such title and appurtenances as were conveyed to Labowitz; and as hereinafter pointed out, Labowitz did not as grantee obtain any rights by virtue of the covenants and restrictions?

(3) Is Labowitz, as grantee, entitled to the protection of the covenants and restrictions?

Finally, it is determined that the defendant Labowitz, as grantee of lands formerly owned by Country Club Properties and by Perlman does not possess the right to enforce the covenants and restrictions. He is not possessed of any rights whatever under the 1946 agreement. It is clear that Perlman and the members of his immediate family were to be protected while they were interested in the neighboring lands, but it is concluded that the parties to the agreement did not intend to confer upon anyone else any rights whatever under the agreement. The wording of the agreement makes it clear that Perlman’s grantees were not intended to be benefited by the covenants. It is to be noted specifically that the agreement expressly stated that the provisions thereof were applicable to ‘ ‘ Abram M. Perlman and/or any member or members of his immediate family” but without expressly extending the same to his successors or assigns. (See par. XVIII.) This, notwithstanding the draftsman many times (including in the same paragraph) used the term “ successors and assigns ” when it was intended that the *809 rights or interests should pass to successors and assigns. This is an indication that the assigns and grantees of Perlman were not to he given the rights of third-party beneficiaries under the agreement. (See Cummins v. Colgate Properties Corp., 2 Misc 2d 301, affd. 2 A D 2d 749.)
Here, it appears that the assigns and grantees of Perlman were not intended to be made third-party beneficiaries of the restrictive covenant. Further, the covenants are not to be considered in the class of covenants imposed in furtherance of a general scheme of development of and for the benefit of a larger tract of land of the grantor, Country Club Properties, thereby conferring upon subsequent grantees equitable rights under the covenants. Therefore, under the rules generally applied, Labowitz, as grantee from Perlman, is not in a position to enforce the covenants. (See Hungerford v. Ocean Gardens, 283 App. Div. 797; Cummins v. Colgate Properties Corp., supra, and cases cited.) And where, as here, there was no general plan or scheme for uniform development of the lands of the grantor, the reservation in the grantor, as here, of the right to annul or modify the restrictions, is to be accepted as conclusively ruling out any claim of rights under the covenants in favor of subsequent grantees of lands from the grantor, Country Club Properties, or from Perlman. (See Goldberg v. Paul, 14 Misc 2d 988, supra, and cases cited.)
The general provisions in the said 1946 agreement that the restrictions, etc., were to run with ‘ ‘ the land affected ’ ’ and bind and inure to benefit of subsequent owners thereof were in my opinion intended solely to bind and benefit the subsequent grantees of the premises which were subjected to the restrictions. In view of foregoing, such provisions do not have the effect of conferring rights upon subsequent grantees of the neighboring lands of grantor Country Club Properties and of Perlman.
Furthermore, on the conveyance by Country Club Properties to Perlman in 1948 of its remaining lands, namely, the 51-foot lake front lot, there were inserted in the deed provisions that the former reserved to itself and did not thereby grant to Perlman “ any of the rights, options and/or privileges ” vested in the former by the 1946 agreement, it being stated that it was “ specifically understood that the party of the second part acquires no rights of any character in the said instrument by virtue of this conveyance to him by the party of the first part. ’ ’ Clearly, the purpose of such provisions was to insure the retention by the Country Club Properties of all its rights under the 1946 agreement, and also to bar the passing to Labowitz (the then immediately intended grantee from Perlman) of any rights *810 under the agreement. Obviously, the corporation intended by the provisions in its deed to retain the control of all of its rights under the 1946 agreement including the right to alter or cancel the restrictions, and this is inconsistent with the passing of rights under the agreement to Labowitz.
Finally, it is to be noted that the court specifically rules against the contentions of plaintiff that it was the intent of the parties that the covenants and restrictions should terminate when the corporation and Perlman in 1948 divested themselves of all interest in the neighboring lands, or, if not at that time, then in any event, that it was their intent that the same should terminate on the ending in 1957 of the rights of Perlman and his family under the option provisions in the 1946 agreement. The terms of the agreement as a whole require the conclusion that there is no merit to these particular contentions. Particularly to be noted is the fact that the option provisions, continuing until 1957, were so written and segregated in the agreement as to be independent of the restrictive covenants; and, in connection with the option provisions, it was specifically stated that the subject premises were to be offered thereunder subject to the restrictions created by the agreement. (See par. VII, subpar. d.)
The ultimate conclusion reached is that the covenants and restrictions contained in the 1946 agreement are still binding upon the plaintiff Lakeshore Club and that its premises are subject thereto, but that the only person who may now be entitled to enforce the same is the original covenantee, namely, the defendant Country Club Properties.
Judgment directed in accordance with foregoing. Settle order and judgment on notice. No costs, except taxable costs to defendant Country Club Properties.