J. W. HAMILTON et al., Appellants, v. J. C. BROYLES
et al., Appellees. No. 89—415 S.W.(2d) 352.

Eastern Section. December 2, 1966.

Certiorari Denied by Supreme Court May 15, 1967.

Ellis K. Meacham, Chattanooga, for appellants.

Berke & Berke, Clarence Kolwyck, Chattanooga, for appellees.

PARROTT, J. In this chancery action complainants are the owners of the majority of the lots in Murray Hills Estates, a residential subdivision containing houses costing $25,000 to $40,000. Defendants are the original subdividers and defendant, J. C. Broyles, is a contractor who has started construction of duplexes on two lots. Complainants' original bill avers the erection of these duplex dwellings violates the restrictive covenants of the subdivision. From the decree of the Chancellor denying the injunction and dismissing their original bill, complainants have appealed.

On March 2, 1962, the Tennessee Title Company of Chattanooga, Inc., Trustee, became the owner of a tract of land consisting of 34 acres. The beneficiaries of the trust were Judson C. Wade and Burton Pierce and their wives. At the direction of Wade and Pierce, the Trustee subdivided the land and recorded by separate instrument certain restrictive covenants. One of these covenants contained the following language:

"Only single family residences shall be constructed in said Subdivision, excepting that Tennessee Title Company of Chattanooga, Inc., Trustee (with the consent of the beneficiaries of the Trusteeship) shall have the full right and privilege of designating any one or more lots on which duplex residences may be constructed."

The restrictions imposed on the subdivision were to run with the land for a period of 25 years and shall remain in force and effect for successive periods of ten years each; thereafter, unless and until a majority of the lot owners in the subdivision execute an instrument to

void, modify or change. It is stipulated these restrictions were incorporated in the deeds to complainants and their lots are subject to the covenants.

On October 18, 1962, which is after complainants had acquired their lots, the Trustee conveyed by warranty deed all the remaining lots to Wade and Pierce. This deed makes no reservation or assignment of the power to designate lots upon which duplex dwellings may be erected.

On October 25, 1965, Wade and Pierce conveyed five lots to defendants, J. C. Broyles and wife, and simultaneously, by a separate and unacknowledged and unrecorded instrument, designated these lots for the erection of duplex dwellings. Broyles commenced construction of duplexes on two of the lots and this suit was filed.

After hearing the proof, the Chancellor from the bench stated orally he was of the opinion the covenant in question was an illusory promise, being invalid and ineffective. He further stated if the restrictive covenants were valid, Broyles had obtained permission from Tennessee Title Company of Chattanooga, Inc., Trustee, and its beneficiaries to construct the duplexes and that complainants had failed to show a right to relief.

▮ We are in accord with the Chancellor's conclusion, but for a somewhat different reason. In our opinion this is a valid and enforceable restriction constituting a covenant running with the land. It must be remembered that each of the complainant's deed contained this restriction.

As we construe the deeds, the parties mutually agreed to confide in Tennessee Title Company of Chattanooga, Inc. the power to permit deviations in the single family restriction ''with the consent of the beneficiaries of the

Trusteeship.'' This power could have been at any time in the past and may yet be exercised in favor of complainants or any other lot owner in the subdivision. The fact that the exercise of this power is now invoked by defendants as grantees of the beneficiaries of the trust does not bespeak a lack of mutuality. The covenant is mutually binding except in the negative sense that the beneficiaries may refuse to concur and thus prevent the erection of a duplex residence on any of the lots.

■ The provision of the deeds here under consideration can not be likened to restrictions changeable at the will of the developer. In such cases there is a complete lack of mutuality which under well established rules prevent enforcement of the restriction as a covenant running with the land.

■ The deeds here involved leave nothing subject to deviation from the general scheme of development except the restriction relating to single family residences. All other restrictions remain unalterable. As to duplex residences, the parties mutually agreed they could be constructed in the subdivision when approved by the Tennessee Title Company if the benficiaries of the trust should concur. It must be assumed the parties had good reasons for conferring this power upon the Title Company and giving the developers the veto power. By acceptance of a deed containing this power the purchasers of lots agreed to this provision of the deeds as much as the developers of the land. We can see nothing in it violative of law or public policy. Nor can we perceive any basis for invoking estoppel to prevent the exercise of this power by the Title Company in keeping with the terms of the deeds.

For cases holding such covenants to be valid, see Thompson et al. v. Glenwood Community Club, 191 Ga.

122

196, 12 S.E.2d 623; Grussi v. Eighth Church of Christ, 116 Or. 336, 241 Pa. 66; Lakeshore Club, Inc. v. Country Club Properties, Inc., 25 Misc.2d 803, 206 N.Y.S.2d 684; Suttle v. Bailey, 68 N.Mex. 283, 361 P.2d 325, 326; Thrasher v. Bear, 239 Ala. 438, 195 So. 441; Humphrey v. Beall, 215 N.C. 15, 200 S.E. 918. See also cases and annotation in 4 A.L.R.3d 1570, 19 A.L.R.2d 1274.

Having held the restriction to be valid and enforceable leaves us with the question of whether or not there was compliance with the agreement in designating the five lots which were sold to Broyles as lots on which duplexes could be erected. The proof shows that when Wade and Pierce conveyed these lots to Broyles, they simultaneously gave their permission to construct duplexes. At the time of this conveyance, the Trustee was under the erroneous impression it did not have to make a designation. Nevertheless, after this controversy arose, the Trustee, in writing, gave its permission for duplexes to be constructed.

We concur with the Chancellor's finding that there has been substantial compliance with the agreement. Furthermore, we think it is of little consequence that the Trustee did not make a designation until after the lots had been sold to Broyles. It is clear at the time of the sale the Trustee was willing to make such designation but thought it was unnecessary and was under the impression the earlier deed had conveyed all its rights and interest in the land.

In Laughlin v. Wagner, 146 Tenn. 647, 244 S.W. 475, our Supreme Court, in determining the rights of parties bound by a restrictive covenant, said:

"Unquestionably it is an established rule of law that a person owning a body of land may sell portions thereof and make restrictions as to its use for the benefit of himself as well as those to whom he sells other portions of the land, and he may invoke the remedy of injunction to prevent a violation of the same, in proper cases, provided of course the restriction is not against some public violation. There is certainly good reason in this rule when applied to the common practice of inserting in deeds a restriction such as tends to create a residential section against those uses which would tend to mar the beauty and detract from the value of the property by uses inconsistent with the uses intended. In such deeds the grantee does not acquire an absolute and unqualified title, but it is a part of the title which he accepts, that the use of the land shall be limited and be restricted in use as provided by the deed. 13 Cyc. 718; 7 R.C.L. 1114; Pomeroy's Equity, Vol. 2, Section 1695."

Also in the case of Turnley v. Garfinkel, 211 Tenn. 125, 362 S.W.2d 921, the Court said it was common practice for developers of high-class residential subdivisions to provide restrictions and that such restrictions were binding on anyone who purchases with notice of them and are enforceable by the owner of any of the lots so protected.

The Court went on to say:

"Such restrictive covenants, of course, like other contracts, will be enforced according to the clearly expressed intention of the parties; but being in derogation of the right of unrestricted use of property, will be strictly construed, and will not be extended by im-

plication to anything not clearly and expressly prohibited by their plain terms. Lowe v. Wilson, 194 Tenn. 267, 269-270, 250 S.W.2d 366; Emory v. Sweat, 9 Tenn. App. 167, 176; Southern Advertising Co. v. Sherman, 43 Tenn.App. 323, 326, 327, 308 S.W.2d 491.''

Under the foregoing rules of construction we must give a fair and reasonable meaning to the restrictive covenants and once the intention of the parties has been ascertained, the covenant will be enforced if the use of the property is for legitimate purposes or such use is not a nuisance per se. White v. Gulf Refining Co., 156 Tenn. 474, 2 S.W.2d 414.

■ Another argument advanced by appellants is that since the conveyance by the Trustee to the beneficiaries did not include a reservation or assignment of the power to designate lots that may be used to erect duplexes, this power then became vested in all the lot owners or constituted a merger of the legal and equitable titles, thus terminating and extinguishing the powers of the Trustee to designate. Counsel has not cited and we have been unable to find any case supporting this theory.

■ Generally, it is true, when the Trustee conveys all of the trust property to the settlors or beneficiaries, the trust is terminated. Upon termination of the trust, the powers of the Trustee are extinguished. Vol. 3, Scott on Trusts, Sec. 342.

■ However, in the present case we do not have sufficient evidence to say this trust has terminated. One of the witnesses testified there was in existence a written instrument creating the trust in question. Undoubtedly this instrument set forth the purposes of the trust and the powers of the Trustee. The instrument was never

placed into evidence and we have no knowledge of its terms. Consequently, it would be presumptous on our part to say that the purposes of the trust had been fully accomplished and the powers of the Trustee extinguished by the sole action of the Trustee's conveying this property to the beneficiary. For all we know there may be numerous and sundry duties imposed upon the Trustee by this agreement, including the obligation of remaining to designate which lots, if any, could have duplexes built upon.

Moreover, we are unable to follow the argument of the appellant that when the Title Company divested itself of the title to all of the lots, its power to approve construction of duplex residences on the lots terminated. There is nothing in the deeds to support this contention. In our view this power is not related to the question of title. The Title Company herein acted in a dual capacity. It held and conveyed title as trustee for the owners and in respect to permitting or refusing to permit construction of duplex residences it was empowered to act for any and all lot owners. When the Title Company granted permission to the defendants to construct these duplexes, its action was pursuant to the power conferred upon it by the mutual consent of all the parties, complainants' consent being by the acceptance of their deeds which imposed the restrictions and granted the power.

It results the assignments of error are overruled with the costs taxed to the appellants.

McAmis, P. J., and Cooper, J., concur.

### On Petition to Rehear

PARROTT, J. Appellants, J. W. Hamilton, et al. have filed a petition to rehear in which they assert this Court in

its original opinion overlooked certain important questions of fact and law.

In our consideration of the petition to rehear, we have reread our original opinion and it is our conclusion the petition to rehear asserts no new matter but attempts to reargue those things which were decided in the original opinion.

In the case of Overstreet v. Norman, 44 Tenn. App. 343, 314 S.W.2d 47, 52, Judge Felts of this Court, later Justice Felts of our Supreme Court, aptly set forth the purpose of the petition to rehear by saying the following.

"The office of a petition to rehear is to call attention to the Court of matters overlooked, not to things which counsel supposes were improperly decided after full consideration. A petition which points out no new matter of law or fact overlooked will be denied. Cox v. McCartney, 34 Tenn.App. 235, 243, 236 S.W.2d 736, and cases there cited."

Thus, the petition to rehear is denied.

McAmis, P. J., and Cooper, J., concur.