John A. McDONALD et ux.,
Plaintiffs-Appellees,

v.

A. W. CHAFFIN et al.,
Defendants-Appellants.

Court of Appeals of Tennessee,
Middle Section.

June 27, 1975.

Certiorari Denied by Supreme Court
Nov. 11, 1975.

Harry S. Lester of Lester, Hildebrand, Nolan, Lane, Underhill, Mondelli, Flynn & Porter, Nashville, for defendants-appellants.

Richard D. Taylor of Glasgow, Adams & Taylor, Nashville, for plaintiffs-appellees.

1. The property is lot number 55 on the Plan of Section I, West Meade Farms, Inc., of

## OPINION

DROWOTA, Judge.

This appeal presents the question whether a covenant restricting the use of property to residential purposes prevents the use of such property as a church.

Plaintiff-appellees John A. McDonald and Evelyn McDonald are property owners seeking to enforce a covenant restricting the use of certain property purchased by defendant-appellants A. W. Chaffin, Woodrow W. Coleman, Bobby Brown, James P. Sadler, Robert Howell, and Eugene Balch, who are Trustees of the West Meade Church of Christ.

In October of 1973 defendants completed the purchase of property located at the corner of Harding Road and Brook Hollow Road in the West Meade Farms subdivision in Davidson County.[1] The deed provided that "[t]his conveyance is made subject to restrictive covenants and easement of record in Book 1427, page 19, Register's office for Davidson County, Tennessee, filed for record prior to February 15, 1950."

The restrictive covenants provided, in pertinent part:

(2). No buildings or other improvements of any kind shall be erected upon or moved on to said land to be used otherwise tha[n] as a private dwelling house, or improvement in connection therewith, and no such building shall be used as an apartment, duplex, hotel, shop, store or place of business of any kind, nor as a hospital, asylum, or similar institution, nor as a place of public gathering. No garage, servant's house, or other improvement shall be erected, maintained, or used except in connection with a main dwelling house built in conformity with these restrictions, and in no event shall any such garage, servant's house or other improvements be used as a main dwelling either temporarily or permanently.

\*   \*   \*   \*   \*   \*

record in Book 1424, page 47, Register's office of Davidson County.

(8). The provisions of this instrument and all restrictions and covenants herein contained shall continue in full force and effect until December 31, 1985.

(9). All of the restrictions and provisions herein contained shall be deemed to be covenants running with the land to which they apply, as set out herein, and shall be binding upon and for the benefit of the purchasers and owners of the lots on said recorded plan, and their respective heirs, successorys [sic], administrators and assigns, and may be enforced by all or any of the owners of property in said subdivision and the failure to enforce these restrictions because of any one violation shall not be deemed a waiver of such right as to a subsequent or other violation, such right being a continuing one.

On December 5, 1973, plaintiffs, owners of nearby property in the subdivision, filed a complaint in the Chancery Court of Davidson County alleging that defendants were using the restricted property for church services and asking that defendants be temporarily and permanently enjoined "from using the property for church services or other public gatherings or from constructing or erecting on the premises any building other than a private residence during the period said restrictive covenants are effective." On December 17, affidavits by three other property owners were filed. John T. Conners, Jr. stated that he had been "a strong advocate throughout the last ten years of keeping our neighborhood totally residential notwithstanding attempts to locate other activities in the area" and outlined his efforts in preventing the construction of a high school in the area and in "enforcing the covenants" on certain property in the neighborhood that had been contracted for sale to a private club. Jerome Glaser stated that he had "personally witnessed the regular use of the subject property on each Sunday and Wednesday for the past few weeks as a church and [had] seen upwards of fifteen cars parked in the driveway and on the lawn." Roy Shain-berg stated that he was aware that church services were being held on the property.

On December 18, 1973 defendants answered the complaint, admitting that "more than once since they have purchased the property, they have met on the premises in a private religious gathering" and denying that "the residence has ever been used as a place of public gathering." The contract for purchase of the property was submitted to the court, and showed that the vendor was aware of the use to which defendants intended to put the property, as the contract was "contingent on obtaining building permit for a church."

On December 28, 1973 the Chancellor entered a Decree finding that "the plaintiffs' application for a temporary injunction to restrain the defendants from using the premises as a place of public gathering in violation of the restrictive covenants applicable to said property is well-taken and should issue conditioned upon the plaintiffs making bond in the amount of $2,000.00." The Chancellor ordered that the injunction take effect January 1, 1974 and continue pending further orders of the court.

On September 16, 1974 defendants moved the court to dissolve the temporary injunction. On October 28, 1974 defendants filed an affidavit by Howard F. Butler. Mr. Butler stated that he is a member of the "Lord's Chapel" and that from late 1971 until April 1, 1973 the church had been permitted to use certain other property in the neighborhood for religious services on a regular basis, without objection from other property owners.

On November 7, 1974 the Chancellor entered a Decree making the temporary injunction permanent, and incorporating a Memorandum Opinion of October 31, 1974. The Memorandum reflected that the parties had agreed that the action of the court on the motion to dissolve the injunction would be determinative of the case. The Chancellor held that defendants were using their property as a church and that such use violates the restrictive covenant "on two

counts: (1) as being a use otherwise than as a private dwelling and (2) as a place of public gathering." From the final decree, defendants prayed for and were granted this appeal, which they have perfected.

Appellants' single assignment of error is that "the trial court erred in ruling that the injunction against the defendants should be made permanent because such ruling violates the First Amendment of the United States Constitution and since the Restrictive Covenants pertaining to the property do not restrict the use of the same as a matter of law so as to prohibit the defendants from conducting private worship in the residence in question."

■ Restrictive covenants are to be strictly construed. That is, they are to be read without the drawing of unnecessary implications and will not be taken to preclude that which is not plainly prohibited. *Shea v. Sargent*, 499 S.W.2d 871, 873 (Tenn. 1973). But in reading the covenant we should give the words a fair and reasonable meaning in order to effectuate its purpose. *Hamilton v. Broyles*, 57 Tenn.App. 116, 415 S.W.2d 352 (1966).

■ We agree that any use of the subject property as a church building would constitute a violation of the applicable restrictive covenant. Such use is not for residential purposes, and we take judicial notice that such use would ordinarily entail regular public gatherings. This result is mandated by the plain meaning of the covenant and is consistent with the "complete accord" reached by the many other courts that have considered the question of the applicability to churches of covenants restricting property to residential use. See Annot., 13 A.L.R.2d 1239.

There is no bill of exceptions in this case and we find no proof in the record to contradict the Chancellor's finding that the building on the subject property was in fact used as a church and not as a residence, or that the worship services were public gatherings. It was conceded by appellants in oral argument that no one resides in the structure. Thus we are not faced with any issue involving the applicability of such restrictive covenants to persons conducting private religious worship services in their homes.

The remaining question is whether federal[2] constitutional restrictions exist on the power of the Chancery Court to enforce the restrictive covenant in this case. The restrictive covenant here involved was expressly incorporated by reference into the deed conveying the property to defendants. As such the restriction originated purely in private conduct. It is not clear whether judicial enforcement of the private agreement, *in such a case as this*, ought to trigger constitutional restrictions designed to restrain action by the federal and state governments. Of course, the agreement rests upon state law recognizing the validity of such limitations on land use and requires for its effectiveness enforcement by the state. See *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948) (court enforcement of a restrictive covenant excluding persons of designated race or color from the ownership or occupancy of real property constitutes state action).

■■ Assuming, *arguendo*, the presence of state action, we find that court enforcement of the restrictive covenant does not violate the first amendment. Enforcement of a facially neutral restriction on the use of land for other than residential purposes works only an incidental or indirect burden on appellants no different from that borne by other property owners and does not rise to the level of a violation of their rights of assembly or free exercise of religion. See *Braunfeld v. Brown*, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961). In this circumstance, churches are on the same plane as other property owners with respect to the use of land. Because of the incidental nature of the restriction, we are not obligated

**2.** Appellants have raised no state constitutional issues.

to find a "compelling" state interest to support the restriction. Compare *Braunfeld v. Brown,* supra, with *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963).

 We are not here faced with a situation in which persons are effectively restricted from establishing a place of worship due to a pervasive system of restrictive covenants or zoning throughout the area. Nor are we confronted with an attempt to secure the assistance of the state in the discriminatory enforcement of restrictions as between religions.[3] The first amendment does not preclude reasonable regulation of the time, place, or manner of the exercise of constitutionally protected activities. *Jones v. Opelika,* 316 U.S. 584, 62 S.Ct. 1231, 86 L.Ed. 1691 (1941). The Chancellor was not in error in enforcing the place restriction agreed upon by the previous owners of the private property herein involved. Cf. *Village of Belle Terre v. Boraas,* 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974).

The decree of the Chancellor is affirmed. Costs of the appeal are taxed to appellants.

Affirmed.

SHRIVER, P. J., and TODD, J., concur.

---

**3.** We do not understand the affidavit of Howard F. Butler as establishing an intent by surrounding property owners to engage in discriminatory enforcement of the covenant. Appellants have not so interpreted it, in either their brief or oral argument. It appears the affidavit was originally offered in an attempt to prove a waiver of the restrictive covenant, a contention that has not been pursued in this Court.