J. B. HINSON and wife, MILDRED    )
HINSON, THOMAS GUY PORTER and )
wife, GRACE PORTER, and CHARLES )
BOGGESS and wife, ROBERTA      )
BOGGESS,                   )
                             )     **Wayne County Chancery**

       Plaintiffs/Appellants,     )     **No.  9614**
                             )
VS.                         )
                             )
**BEECHVIEW CORPORATION, BEN** )     **Appeal No.**
**GASPARRO, manager, BILL BATES,** )     **01A01-9709-CH-00498**
**individually, and BEN GASPARRO,**  )
**individually,**               )
                             )
       Defendants/Appellees.     )

**FILED**

**May 29, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

### IN THE COURT OF APPEALS OF TENNESSEE
### AT NASHVILLE

### APPEAL FROM THE CHANCERY COURT OF WAYNE COUNTY
### AT WAYNESBORO, TENNESSEE

### HONORABLE ROBERT L. JONES, JUDGE

Douglas Thompson Bates, III
P.O. Box 1
Centerville, Tennessee 37033
ATTORNEY FOR PLAINTIFFS/APPELLANTS


James Y. Ross, Sr.
Barrister's Building
102 Public Square North
P.O. Box 1356
Waynesboro, Tennessee 38485
ATTORNEY FOR DEFENDANTS/APPELLEES

### AFFIRMED IN PART, REVERSED IN PART, REMANDED

HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:
BEN H. CANTRELL, JUDGE
WILLIAM C. KOCH, JR., JUDGE

J. B. HINSON and wife, MILDRED        )
HINSON, THOMAS GUY PORTER and )
wife, GRACE PORTER, and CHARLES )
BOGGESS and wife, ROBERTA          )
BOGGESS,                                          )
                                                         )        **Wayne County Chancery**
        Plaintiffs/Appellants,              )        **No. 9614**
                                                         )
VS.                                                     )
                                                         )
BEECHVIEW CORPORATION, BEN   )        **Appeal No.**
GASPARRO, manager, BILL BATES,  )        **01A01-9709-CH-00498**
individually, and BEN GASPARRO,   )
individually,                                     )
                                                         )
        Defendants/Appellees.            )


# O P I N I O N


The captioned plaintiffs seek enforcement of certain restrictions upon certain property located in the same area as that of the property of plaintiffs and to require an accounting for use of fees charged.


The Trial Court ordered an accounting and upheld restrictions as to part, but not all of the area desired by plaintiffs.


Plaintiffs have appealed and stated the issue on appeal as follows:

> 1.      Whether the trial court was correct in finding that only Section II and Lots 1-11 of Section III of the Beechview Recreation Development are subject to the restrictive covenant prohibiting the placement of mobile homes on residential lots, and all other lots or land outside of Section II and Lots 1-11 of Section III of said development was unrestricted unless conveyed by deed adopting such covenant prohibiting placement of mobile homes thereon.

The captioned defendants-appellees state the issue on appeal as follows:

> 1.      Whether the Trial Court was correct in finding that only Section II and Lots 1-11 of Section III of the Beechview Recreation Development are subject to the restricive covenant prohibiting the placement of mobile homes on residential lots, and all other lots or land outside of Section II and Lots 1-11 of Section III of said development

was unrestricted unless conveyed by deed adopting such covenant prohibiting placement of mobile homes thereon.

Although the judgment of the Trial Court requires an accounting, the record contains no evidence that the accounting was ever accomplished or that final, enforceable judgment was ever rendered thereon. For this reason, the judgment from which this appeal is prosecuted is not a final judgment appealable as of right and is subject to dismissal pursuant to TRAP Rule 3(a) and TRCP Rule 54.02. However, due to the advanced stage of this appeal, the infirmity is waived, and the issues presented by the parties will be discussed.

The Plaintiffs sought the following relief:

1.      That the Court declare that since none of the lots have been designated as mobile home lots, then, there be no mobile home lots;

2.      That the court declare the mobile homes located on the development to be in violation of the Declaration;

3.      Should the court not do as above prayed, then, to assess damages against the defendants for their misrepresentation of the mobile home restrictions;

4.      That the court order the Corporation to immediately provide for a water facility and to establish a time table for such under the supervision of the Court;

5.      Should the Court not do as above prayed, then, to assess damages against the defendant Beechview for its failure to so do;

6.      That the Court order the Corporation to show the plaintiffs their books to show revenues and expenditures of the fees;

7.      For general relief.

The parties agreed to bifurcate the trial and try the damage issues separately. After the hearing the trial judge entered the following judgment:

> This matter came on to be heard on the 30th day of January 1997 upon the appearance of all parties, together with their attorneys, to wit: for the plaintiffs, Douglas Thompson Bates, III, for the defendants, Billy W. Townsend and James Ross; upon the entire record of the cause and upon sworn

testimony presented in open court, together with exhibits thereto.

The plaintiffs non-suited all relief requested against all defendants, except for the request to require the corporation to account for its fees and to declare which lots restricted against mobile homes. The Court hereby enters an order allowing said non-suit.

The Court further dismisses all counter-claims filed by the defendants against the plaintiffs.

The Court further ordered the defendant, Beechview, to pay all court costs.

The Court did make findings of facts, which are as follows, to wit:

1. There was a general plan for Beechview development, but only on lots designated in the attachment as the pink area. The Court does further find that that was a general plan on restrictions 12 through 19, but the defendants' oral statement that mobile homes are allowed on the ridge would be effective to allow mobile homes.

2. The restrictions may not be changed by declarant or anyone else irrespective of the language in any filings of the declarant or anyone in regard to the lots shown on the attachment.

3. There was no general plan as to any other property in the development.

4. All other lots are unrestricted, except those lots having the restrictions in their deeds even though outside of the area held restricted by these covenants.

5. Fees collected from lot owners under the authority of restrictions or improvements for maintenance of the development are not unrestricted funds of the corporation. Persons against whom assessments are made are entitled to periodic accounting of the total receipts, a breakdown of classification of those receipts, if there are different classifications, and an itemized list of how funds are expended, the payees of those distributions and the purposes for which the funds are distributed to payees. This shall not extend to money derived from the sell of lots.

It is, therefore, ORDERED, as follows, to wit:

## I.

The lots shaded in pink are declared to be restricted against mobile homes. All other lots whose deeds contain

mobile home restrictions are likewise restricted. The
remaining property of Beechview is unrestricted.

**II.**

As to lots restricted, these restrictions may not be
changed by declarant or anyone irrespective of any language
of the filings of the declarant or anyone.

**III.**

Beechview Corporation is ordered to comply to the
requests of the plaintiffs for an accounting of their fees as set
out in the findings above.

Attached to the judgment is a photostatic copy of a drawing which is made Exhibit A to
this opinion. It contains no pink shading.

As we have noted the appellant lot owners in the Beechview subdivision contend that all
the property in the subdivision contains a restriction (either by a recorded instrument or by a
reciprocal negative easement) against mobile homes.

The record shows that in June of 1988, Beechview Corporation purchased 300 acres of
land in the area of Wayne County where Beech Creek flows into the Tennessee River. The first
development took place in June of 1989 when the corporation recorded two plats in the Wayne
County Register's Office along with a "Declaration of Conditions, Covenants and Restrictions"
(the Declaration) pertaining to the property. The Declaration recited that the "development" was
to be known as Beechview Recreation Development; that it was a part of the property bought in
1988; and that the development was more particularly described in Exhibit A attached to the
Declaration.

Exhibit A described the property shown on the two plats. The first, designated as
"Beechview Recreation Development-Section One," was described in Exhibit A as "lots one (1)
through forty-three (43) on the plat and that these lots were "recreational only." The second plat,

designated as "Beechview Recreation Development-Section Two," shows twelve lots designated as "residential only."

The significance of the residential versus recreational designations lies in the fact that, according to the Declaration, no permanent structures could be built on the recreational lots. They were the lots along the river apparently below the flood line, subject to a TVA flowage easement, and could be used only for camping or picnic purposes. The lots on Part Two designated as residential only were restricted as to the size and structure of the residences to be erected thereon and mobile homes as residences were prohibited except where the plats so designated. The plat did not include any such designation.

At this point we would have to say that the Declaration applied only to the two plats that were recorded and referenced in the Declaration. There is no credible evidence that the corporation had a general plan or scheme to develop the entire 300 acres with restrictions against the use of mobile homes. *See Land Developers, Inc. v. Maxwell*, 537 S.W.2d 904 (Tenn. 1976). An inference might be drawn that the developer intended to restrict the use of all the property to either recreational or residential uses, but the Declaration itself alluded to the possible use of mobile homes on residential lots where such use was designated.

Some other provisions of the Declaration are relevant. In Section VII the corporation reserved the right to amend the Declaration at any time prior to January 1, 1995, without the approval of any lot owners. Any amendment would be effective upon filing in the Wayne County Registers' Office. In the definitions section the Declaration again described the "development" as the property described in Exhibit A (the two plats) and "all other real property which may be annexed hereto as provided herein." Property could be annexed by a "Certificate of Expansion," defined as a recorded document or plat which commits an additional portion of the real estate to the Development. In case other property is added it is to be subject to the Declaration.

The first expansion occurred later in the summer of 1989. On August 31, 1989, the corporation recorded another plat which is called Beechview Recreational Development - Section Three. It showed nineteen lots on the west side of the main road, generally across the road from the residential lots on the plat of Section Two. The plat does not contain any designation concerning mobile homes, nor does it designate the lots as residential or recreational. Nor does the record contain any certificate of expansion filed in connection with this plat.

On October 25, 1990, the corporation filed a Certificate of Expansion bringing Section 1-A and 1-B into the development and subjecting them to the Declaration. The plat(s) for this additional do not appear in the record. The corporation filed another plat on May 31, 1991 designated as Section 2-A. The plat does not designate any lots residential or recreational.

On July 10, 1993, the corporation filed another Certificate of Expansion covering the remainder of the 300 acres and subjecting it to the Declaration "unless a parcel is specifically excluded from the Declaration of Conditions, Covenants and Restrictions and the amendment thereto when said parcel is conveyed." On the same date the corporation filed an amendment to the Declaration which altered slightly the Declaration's prohibition against subdividing the lots.

Although the record is not clear as to when other parts of the original 300 acres were actually subdivided, there are references in the record to Sections 3C, 3D, and 3E. But it appears that large portions of the original 300 acres have not been subdivided, although all of the property was brought into the development in the certificate of expansion filed in 1993. Thus, the restrictions (whatever they are) apply to the entire tract. And it appears that all the plaintiffs purchased property that came out of the original 300 acres.

In 1995, the corporation acquired an additional tract of 122 acres adjoining the original tract at the northwest corner. It does not appear, however, that that property has been developed or restricted in any way.

As we read the various documents the following appears:

> (1)    The original property brought into the Development included Section Two which was designated as residential only. Under the terms of the Declaration, residential property could not contain mobile homes unless the plat so designated. The trial judge correctly found that these lots were so restricted.

> (2)    The record does not show that any of the lots carved out after that time were specifically designated residential. The plats, however, have a legend that restricts how houses are to be located on the various lots. From that evidence and from other evidence in the record we find that all the land above a certain elevation (which we take to be the flood line) was to be sold for residental purposes. Therefore, the conclusion is inescapable that the lots that have been platted and are above the flood line come under the residential restrictions in the Declaration. After July 10, 1993 the Development included the entire 300 acres.

> (3)    Until the Declaration was amended on July 10, 1993, the residential restrictions in the Declaration probibited mobile homes on residential lots unless the plat designated the lot as one suitable for mobile homes. None of the plats contain any such designation. Thus, the residential lots sold prior to July 10, 1993 were restricted to prevent mobile homes as residences.

> (4)    After July 10, 1993, the Declaration allowed the corporation to exempt any lot from the restrictions "when said parcel is conveyed." Therefore, the corporation now has the power to designate in the conveyance what restrictions attach to the property.[1]

> (5)    The record does not show what lots were conveyed after July 10, 1993, nor what exemptions from the Declaration might have been attempted. Therefore we are not able to deal with the restrictions on specific lots. That determination will have to be made on a case-by-case basis.[2]

---

[1]We take no position on whether the restrictions may be orally waived at the time of the conveyance, nor do we take a position on whether allowing the developer to change the restrictions at will can be enforced. *See Hamilton v. Broyles*, 415 S.W.2d 352 (Tenn. App. 1966). The parties have not addressed these issues. But we note that it would be a good idea to require some written record, so that the chain of title will contain the restrictions, if any.

[2]This case is a good example of how not to create a subdivision.

The lower court's order is affirmed in part. Those findings in Parts 1,2,3, and 4 of the lower court's judgment and the conclusion based thereon that conflict with this opinion are reversed. The cause is remanded to the Chancery Court of Wayne County for further proceedings in accordance with this opinion. The issues on remand include any issues reserved at the first trial. Tax the costs of appeal equally to the appellants and the appellee.

**AFFIRMED IN PART, REVERSED IN PART, REMANDED.**

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:

_____
BEN H. CANTRELL, JUDGE

_____
WILLIAM C. KOCH, JR., JUDGE