# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### May 14, 2004 Session

## ALVIN FREEMAN, ET AL. v. JANICE STEWART, ET AL.

**Appeal from the Chancery Court for Sullivan County**
**No. 31435(M)     John S. McLellan, III, Judge**

---

### No. E2003-02285-COA-R3-CV - FILED JULY 27, 2004

---

Janice K. Stewart ("Mrs. Stewart") was the record owner of a parcel of real property located in Tall Oaks Court subdivision when this litigation began. Several of Mrs. Stewart's neighbors filed this suit claiming Mrs. Stewart was in violation of the subdivision restrictions by having a freestanding metal garage and a separate large wooden structure on her property. The Trial Court agreed and gave Mrs. Stewart the option of keeping one of the structures as a garage and ordering her to remove the other structure. Mrs. Stewart subsequently transferred the property to her husband, Ed Stewart ("Mr. Stewart"), who then was added as a defendant. The neighbors filed a petition for contempt against both Mr. and Mrs Stewart when they continued to have both a freestanding metal garage and the wooden structure on their property. A hearing was held on the petition for contempt and the Trial Court held Mrs. Stewart in contempt and found the wooden structure still to be in violation of the subdivision restrictions. We affirm the Trial Court's finding that the wooden structure is in violation of the subdivision restrictions. We vacate the finding of contempt and remand for further proceedings on the claim of contempt as to Mrs. Stewart.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Vacated in Part; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and WILLIAM H. INMAN, SR. J., joined.

Timothy R. Wilkerson, Kingsport, Tennessee, for the Appellants Janice and Ed Stewart.

Kerry A. Musick, Blountville, Tennessee, for the Appellees Alvin and Dinah Freeman, Bill and Kathy Moore, Ray and Shirley Rose, Troy and Lottie Williams, and Jack and Mae Smith.

## OPINION

## Background

This lawsuit involves a dispute between neighbors over alleged violations of subdivisions restrictions. The plaintiffs are Alvin and Dinah Freeman, Bill and Kathy Moore, Ray and Shirley Rose, Troy and Lottie Williams, and Jack and Mae Smith ("Plaintiffs"). Plaintiffs sued Mrs. Stewart, who at that time was the record owner of a parcel of property which bordered various parcels of property owned by Plaintiffs. All of the parties live in Tall Oaks Court subdivision in Sullivan County. In the complaint, Plaintiffs claimed Mrs. Stewart was violating numerous items contained within the Declaration of Restrictions applicable to Tall Oaks Court subdivision. The primary dispute involved two structures on Mrs. Stewart's property, one being a freestanding metal garage and the other being a separate wooden structure still under construction when the complaint was filed.

After a trial, the Trial Court entered an Order on March 2, 2002, which disposed of some of the issues such as whether the condition of Mrs. Stewart's property constituted a nuisance. A Judgment was entered on April 15, 2002, disposing of the remaining issues and determining whether the presence of the two structures violated the Declaration of Restrictions. According to the Trial Court:

> a. The Declaration of Restrictions in place and enforceable against all properties in Tall Oaks Subdivision allow for each lot owner to have one detached private garage for not more than three cars.
>
> b. From the unrefuted testimony of the three expert witnesses called by the Plaintiffs, the standard in the community for a three car garage is a structure that is no wider than 34 feet and no deeper than 22 feet.
>
> * * * *
>
> e. The Defendant presently has on her property a metal "free standing" garage and has almost completed the construction of a much larger wooden structure on her property which is intended to be used as a garage as well as storage.

Based on these factual findings, the Trial Court ordered Mrs. Stewart to remove completely, at her election, either the freestanding metal garage or the separate wooden structure. The Trial Court further held:

[I]f the Defendant elects to keep the wooden structure, it must be re-configured so that it complies with the community standard for a three car garage. In complying with the standard for a three car garage, the Defendant shall not be confined to having a structure that is no wider than thirty four (34) feet and no deeper than twenty two (22) feet, however, the structure must be no larger than seven hundred and forty eight (748) square feet, that is, the structure may be deeper than twenty two (22) feet, or, wider then thirty four (34) feet, but the total square footage cannot exceed the square footage of a building with those dimensions.

The Trial Court also set forth other requirements that needed to be complied with if the wooden structure was retained and Mrs. Stewart intended to construct access to a second level.

Mrs. Stewart originally elected to keep the wooden structure, and she removed the freestanding metal garage. In September of 2002, Plaintiffs filed a motion seeking authority from the Trial Court to have the wooden structure inspected to determine if it was in compliance with the Judgment. Plaintiffs claimed they sought permission from Mrs. Stewart to inspect the wooden structure which may have obviated the need for judicial intervention, but Mrs. Stewart refused to respond to their request. By this time, a different freestanding metal garage was on Mrs. Stewart's property. Mrs. Stewart was no longer represented by counsel and filed a *pro se* response to Plaintiffs' motion for an inspection. In this response, Mrs. Stewart asserted that she was in full compliance with the Trial Court's Judgment. Mrs. Stewart stated that the wooden structure "was made into a storage shed with no access for vehicles." Although not entirely clear, Mrs. Stewart then claimed: (1) in the Judgment the Trial Court allowed her to retain one of the structures as a garage; (2) she decided to keep the freestanding metal garage; (3) the wooden structure no longer was a garage; and (4) the presence of the wooden structure did not violate the Judgment because it was not a garage and, therefore, she had only one "garage" as required by the Judgment.

In December of 2002, Plaintiffs filed a motion to join Mr. Stewart as a defendant because "the property which is the subject of this litigation [has] … been transferred to him from his wife, the original Defendant, after the trial of this cause."[1] Plaintiffs also filed a Petition for Contempt, claiming that while Mr. and Mrs. Stewart ("the Stewarts") initially removed the freestanding metal garage in accordance with the Trial Court's Judgment, they thereafter obtained a permit to erect a "picnic shelter" on the property and then put the freestanding metal garage back up. Plaintiffs further claimed that the "storage shed" still violated the applicable subdivision restrictions as well as the Trial Court's previous order. In March of 2003, the Trial Court granted Plaintiffs' motion to join Mr. Stewart as a defendant. Since Mr. Stewart was now a party to the lawsuit, Plaintiffs refiled their Petition for Contempt, once again claiming both of the Stewarts were in contempt for the reasons set forth in the previous petition. The Stewarts then filed a Motion to

---

[1] Mr. Stewart was at the courthouse when the first trial occurred. Because he was a witness and not a party, he apparently was sequestered in the witness room.

Dismiss claiming, among other things, that they were in full compliance with the Trial Court's Judgment.

A hearing on Plaintiffs' Petition for Contempt and the Stewarts' Motion to Dismiss was conducted on August 12, 2003. The Stewarts were *pro se* at the hearing. The first witness was Dan Rosenbaum ("Rosenbaum"), the president of Associated Builders, Inc. Rosenbaum testified that in the course of performing construction work, he measures buildings to ascertain their square footage. Rosenbaum measured the wooden structure on the Stewarts' property which measured 50' 2" by 14' 10", for a total square footage on the ground floor of 707.82. Rosenbaum noted that this was a two story structure and the second level would have the same square footage as the lower level. The total square footage did not take into account the porches or overhangs.

The next witness was Tim Earles ("Earles"), the Sullivan County Building Commissioner. Earles testified to various building permits obtained by the Stewarts. The Stewarts obtained three permits in July of 2001. These permits were for a carport, a 30' by 58' detached garage, and an 8' by 9' awning to be constructed over a porch. In September of 2002, the Stewarts obtained permits for a 20' by 30' picnic shelter and a 10' by 58' roof which was to be constructed over a deck. In January of 2003, the Stewarts obtained a permit to build a 20' by 30' addition to be attached to the rear of their house. According to Earles, these permits require the property owner to arrange for an initial setback inspection prior to beginning construction and then to arrange for a final inspection once the project is completed. With regard to the permit for the detached garage, the initial inspection was completed, but the final inspection was not. Earles testified that there is no time limit on completing a project and the property owner is responsible for arranging the final inspection upon completion. As a result, if a property owner fails to notify the county that a project is complete and arrange for the final inspection, the county never would know if the specifics of the permit were complied with unless somebody called and complained. Earles stated it would not violate the zoning ordinance for the Stewarts to obtain a permit to build a garage and then use that structure purely for storage. When a property owner applies for a building permit, the Building Commission does not ascertain whether the proposed structure would violate any subdivision restrictions because the Building Commission's only concern is whether the proposed structure violates applicable zoning laws.

Plaintiffs' counsel called Mr. Stewart as a witness and asked him to identify various pictures, at which point Mr. Stewart refused to answer any questions and invoked his "constitutional Fifth Amendment rights." Mr. Stewart also claimed he had not "had any due process." The Trial Court told Mr. Stewart the Fifth Amendment did not apply and Mr. Stewart then proceeded to identify the pictures. Mr. Stewart acknowledged that the lower floor of the wooden structure was "enclosed with a door so nothing can get in except a person." Mr. Stewart further testified that the wooden structure has a second level "loft" with a solid floor. Mr. Stewart identified a picture which showed a porch on the second floor of the wooden structure with an overhang from the roof. Mr. Stewart went on to add that this previously had been an open deck and he obtained a permit to cover it with a roof. Mr. Stewart also identified a metal garage which he testified was "attached to the

-4-

house with nails." This is not the same metal garage that was at issue previously, although this new metal garage is in the same location as the previous one.

Mrs. Stewart also testified and she admitted the "original plan" for the wooden structure was for it to be a garage. Mrs. Stewart added, however, that the wooden structure was not completed as a garage since there is no access for vehicles.

The Trial Court entered its Judgment on Plaintiffs' Petition for Contempt and the Stewarts' Motion to Dismiss on September 4, 2003, at which time it noted that it previously had given Mrs. Stewart the option of maintaining either the metal structure as a garage or removing the metal structure and using the wooden structure as a garage, "with the one not to be used as a garage to be removed from the property." The Trial Court then stated:

> 3. The Defendants, by their own admission, have attached the metal structure to their home and are using it as a garage and have converted the wooden structure to a storage building thus being in violation of both Paragraph 4 of the applicable restrictions and the prior Order of this Court.
>
> 4. That Mr. Ed Stewart was not a Defendant in this cause when it was originally filed, he having been added as a Defendant by subsequent Order of the Court, therefore, he is not in contempt of Court for the violation of the Judgment entered after the original trial on March 6, 2002.
>
> 5. That Janice Stewart is in contempt of court due to the retention of both the metal garage and the wooden structure and due to the use of the wooden structure as a storage building as opposed to a three car garage.

The Trial Court reserved ruling on sanctions to be imposed on Mrs. Stewart until such time as the Stewarts chose not to appeal or until there was a final ruling by an appellate court. The Trial Court denied the Stewarts' Motion to Dismiss and then designated this Judgment as a final appealable order.

The Stewarts appeal raising five issues, which we quote:

> 1. Whether the evidence contained in the record is insufficient to support a finding by a rational trier of fact that Janice K. Stewart is guilty beyond a reasonable doubt of contempt of court and the Judgment therefore contrary to the weight of the evidence?

-5-

2. Whether the trial court committed reversible error in finding Janice K. Stewart to be in contempt of court for the attachment of a metal structure to property she does not own and the use of a wooden structure as a storage building on property she does not own and did not own at the time of the offenses for which she stands convicted of contempt?

3. Whether the trial court committed reversible error in holding the attachment of a metal structure and its use as a garage and the use of a wooden structure to a storage building on property owned by Ed Stewart was a violation of a previous Order of the trial court or subdivision restrictions?

4. Whether the evidence contained in the record is insufficient to support a finding by a rational trier of fact that Ed Stewart is, by a preponderance of the evidence, in violation of subdivision restrictions applicable to property owned by him and the Judgment is therefore contrary to the weight of the evidence?

5. Whether the trial court committed reversible error by compelling parties charged with contempt to testify in their trial despite their strong objections to testifying?

Plaintiffs do not appeal the Trial Court's decision that Mr. Stewart was not in contempt.

**Discussion**

The factual findings of the Trial Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We will begin by discussing the original Judgment entered on April 15, 2002. In that Judgment, the Trial Court noted that Mrs. Stewart had on her property a freestanding metal garage and a much larger separate wooden structure which she intended to use as a garage and for storage. The Trial Court also concluded the Declaration of Restriction for Tall Oaks Court subdivision allowed each lot owner to have one detached private garage for not more than three cars. The Trial Court ordered Mrs. Stewart to decide which of the two structures she wanted to retain and to remove the other structure. The April 15, 2002, Judgment was a final appealable judgment which Mrs. Stewart did not appeal. Therefore, in this appeal, we will not undertake to question the propriety of

any of the Trial Court's factual or legal conclusions set forth in that Judgment and they are binding on Plaintiffs and Mrs. Stewart.

Mr. Stewart argues that the April 15, 2002, Judgment is not binding on him because he was not added as a party until after entry of that Judgment.[2] Mr. Stewart then argues that the preponderance of the evidence weighs against the Trial Court's conclusion that the wooden storage structure violates the Declaration of Restrictions. Covenants such as the one involved in this case are valid and are binding on all purchasers with notice. *See, e.g., Richards v. Abbottsford Homeowners Ass'n*, 809 S.W.2d 193, 195 (Tenn. Ct. App. 1990). However, as pointed out by the Stewarts, they are strictly construed because they are in derogation of a property owners right to unrestricted use of their property. *Id.*

> Like other contracts, covenants should be enforced according to the parties' clearly expressed intentions. *Waller v. Thomas*, 545 S.W.2d 745, 747 (Tenn. 1976); *Hamilton v. Broyles*, 57 Tenn. App. 116, 123-24, 415 S.W.2d 352, 355 (1966). They should be interpreted in light of their fair and reasonable meaning, *McDonald v. Chaffin*, 529 S.W.2d 54, 57 (Tenn. 1975), but should not be extended to cover circumstances not plainly included within their terms. *Turnley v. Garfinkel*, 211 Tenn. 125, 130, 362 S.W.2d 921, 923 (1962); *Southern Advertising Co. v. Sherman*, 43 Tenn. App. 323, 326-27, 308 S.W.2d 491, 493 (1958). All doubts concerning a covenant's applicability should be resolved against the covenant. *See Land Developers, Inc. v. Maxwell*, 537 S.W.2d at 918.

*Richards*, 809 S.W.2d at 195.

According to Mr. Stewart, the only "objective" evidence introduced at trial was that of Earles who testified that the wooden structure did not violate any zoning ordinances. Taking that one giant step further, Mr. Stewart claims it is reasonable to conclude that the wooden structure is in compliance with the Declaration of Restrictions because he originally obtained a permit to build that structure as a garage. In our opinion, this argument completely overlooks Earles' testimony that when issuing a permit, the Building Commission does not determine whether the proposed structure violates subdivision restrictions. In other words, the most Earles' testimony on this point can be said to offer is that the wooden structure does not violate a zoning ordinance, a fact which Plaintiffs readily concede. This testimony cannot fairly or reasonably be interpreted as having any impact whatsoever on whether the wooden structure is in violation of the Declaration of Restrictions.

The applicable portion of the Declaration of Restrictions provides as follows:

---

[2] Plaintiffs did not and do not argue that Mr. and Mrs. Stewart were in privity with each other and the original Judgment was, therefore, binding on Mr. Stewart, and the Trial Court did not base its September 4, 2003, Judgment now on appeal on that ground. We, therefore, express no opinion on this issue.

4. Land use and Buildings. All lots restricted hereby shall be known and designated as residential lots. No structure shall be erected, altered or permitted to remain on any lot other than one detached single family dwelling, not to exceed two stories in height and a private garage for not more than three cars.

Mr. Stewart argues that because the wooden structure is not a garage, the foregoing does not even apply. The Trial Court disagreed, and so do we. The obvious purpose of the foregoing restriction is to prohibit the property owners from building various and sundry structures on the property. We agree with the Trial Court's conclusion that the clear intent of the Declaration of Restrictions is to limit the structures permanently built on the property to two types, i.e., a detached single family dwelling or a three car garage with the total number of structures allowed being one detached single family dwelling and one garage for not more than three cars.

The Stewarts also argue that other property owners have storage sheds on their property and it is not right to make them take theirs down and not do the same thing to the other property owners. We reject this argument for two reasons. First, as noted by the Trial Court, what may or may not be on other property owners' land is not at issue in the present case. Second, the Stewarts' storage facility is over 1,400 square feet when counting the square footage of both levels, even without taking into account the two decks. It is interesting that in Paragraph 8 of the Declaration of Restrictions, the minimum living area of the houses built on lots one through nine must be at least 1,100 square feet, and the living area of the houses built on lots ten through eighteen must be at least 1,400 square feet. Quite simply, the Stewarts' "storage" facility is the size of a house. Even if the Declaration of Restrictions could be read to allow storage sheds, we do not believe they could fairly be read to allow storage sheds the size of a house. We affirm the September 4, 2003, Judgment of the Trial Court insofar as it concluded the wooden storage structure is in violation of both the Declaration of Restrictions and its prior order.

With regard to the issues pertaining to the Trial Court's finding of contempt, there are two types of contempt, civil and criminal. The difference between civil and criminal contempt was recently discussed by our Supreme Court in *Doe v. Bd. of Professional Responsibility*, 104 S.W.3d 465 (Tenn. 2003) as follows:

> We have on numerous occasions stated that a contempt may either be civil or criminal in nature. *See Wilson v. Wilson*, 984 S.W.2d 898, 906 (Tenn. 1998) (Birch, J., dissenting); *Black*, 938 S.W.2d at 398-401; *Turner*, 914 S.W.2d at 954. Civil contempt occurs when a person does not comply with a court order and an action is brought by a private party to enforce rights under the order that has been violated. *See Black*, 938 S.W.2d at 398; *Robinson v. Air Draulics Eng'g Co.*, 214 Tenn. 30, 377 S.W.2d 908, 912 (1964); *Turner*, 914 S.W.2d at 995. Punishment for civil contempt is designed to coerce compliance with the court's order and is imposed at the insistence and for the

benefit of the private party who has suffered a violation of rights. *See Black*, 938 S.W.2d at 398; *Turner* 914 S.W.2d at 955; *Sherrod v. Wix*, 849 S.W.2d 780, 786 n.4 (Tenn. Ct. App. 1992). Also, in civil contempt cases, the quantum of proof necessary to convict is a preponderance of the evidence. On the other hand, criminal contempts are "intended to preserve the power and vindicate the dignity and authority of the law, and the court as an organ of society." *Black*, 938 S.W.2d at 398. Punishment for criminal contempt is both punitive and unconditional in nature and serves to adjudicate "an issue between the public and the accused." *Id.* In criminal contempt proceedings, the defendant is presumed to be innocent and must be proven guilty beyond a reasonable doubt. *See Shiflet v. State*, 217 Tenn. 690, 400 S.W.2d 542, 543 (1966).

*Doe*, 104 S.W.3d at 473-74.

Unfortunately, the Trial Court's Judgment does not indicate whether it found Mrs. Stewart in civil or criminal contempt. Additionally, the Trial Court's decision to withhold its ruling on what sanctions to apply to Mrs. Stewart for her contempt of court leaves us further in the dark. Without the sanctions having been determined by the Trial Court, we cannot tell whether they are designed to coerce Mrs. Stewart's compliance with the Trial Court's order, i.e., civil contempt, or whether they are intended to preserve the power and vindicate the authority of both the Trial Court and the law, i.e., criminal contempt. Likewise, the Petition for Contempt does not state whether Plaintiffs were seeking to have the Stewarts held in civil or criminal contempt. On appeal, the Stewarts argue Plaintiffs were seeking to have them held in criminal contempt and that the Trial Court actually found Mrs. Stewart in criminal contempt. On the other hand, Plaintiffs claim they at all times were seeking to have the Stewarts held in civil contempt, and the Judgment of the Trial Court involved a finding of civil contempt on the part of Mrs. Stewart. This case is a good example of why it is important when there is a finding of contempt for a trial court to state specifically whether the contempt is civil or criminal. The difference between civil and criminal contempt involves not only the availability of constitutional safeguards, but also affects this Court's standard of review. *See, e.g., Barber v. Chapman*, No. M2003-00378-COA-R3-CV, 2004 Tenn. App. LEXIS 111, at *8 (Tenn. Ct. App. Feb. 23, 2004), *no appl. perm appeal filed* ("[O]n appeal, individuals convicted of criminal contempt lose their presumption of innocence and must overcome the presumption of guilt.").

Another important aspect of civil contempt is the ability of the contemnor to purge herself of contempt. Our Supreme Court in *Ahern v. Ahern*, 15 S.W.3d 73 (Tenn. 2000) noted the following about civil contempt proceedings:

> After a finding of contempt, courts have several remedies available depending upon the facts of the case. A court can imprison an individual to compel performance of a court order. This is

> typically referred to as "civil contempt." This remedy is available only when the individual has the ability to comply with the order at the time of the contempt hearing. Tenn. Code Ann. § 29-9-104; *see also Garrett v. Forest Lawn Memorial Gardens*, 588 S.W.2d 309, 315 (Tenn. Ct. App. 1979). Thus, with civil contempt, the one in contempt has the "keys to the jail" and can purge the contempt by complying with the court's order. Tenn. Code Ann. § 29-9-104; *Garrett*, 588 S.W.2d at 315. In civil contempt, the imprisonment is meted out for the benefit of a party litigant. *See Shiflet v. State*, 217 Tenn. 690, 693, 400 S.W.2d 542, 543 (1966).

*Ahern* 15 S.W.3d at 79 (footnote omitted).

While we are inclined to agree with Plaintiffs that Mrs. Stewart was held in civil contempt, based on the record before us we cannot be certain this is correct. Accordingly, we must remand this case to the Trial Court to state specifically whether Mrs. Stewart was found in civil or criminal contempt. Regardless of whether Mrs. Stewart is found to be in civil or criminal contempt, she will be entitled to appellate review of the sanctions imposed by the Trial Court, if any. In order to avoid multiple appeals in the future, the Trial Court is directed to impose the sanctions it believes are appropriate, if any, so the finding of contempt and the sanctions imposed can be reviewed at the same time should Mrs. Stewart choose to pursue an appeal at that time.

As noted previously, one aspect of civil contempt is that the contemnor has the "keys to the jail" and has the power to take action to purge herself of the contempt. Mrs. Stewart claims she does not have that power because she no longer owns the property. The record contains no evidence regarding why the property at issue was transferred from Mrs. Stewart to Mr. Stewart. The Trial Court's September 4, 2003, Judgment makes no mention of this transfer and its impact, if any, on the contempt claim against Mrs. Stewart. Certainly, if the transfer was a sham made for the purpose of avoiding the clear requirements of the April 15, 2002, Judgment, then it is of no effect for purposes of this litigation as such shenanigans simply to avoid a court order cannot be permitted to stand.[3] If, however, there was a legitimate basis for the transfer other than to attempt to circumvent the Trial Court's clear order, *and* the legitimate basis was the reason for the transfer, then such a finding may negate a finding of civil contempt by Mrs. Stewart.

Because we conclude this matter must be remanded to the Trial Court for the reasons set forth above, Mrs. Stewart's other issues surrounding the finding of contempt are pretermitted. As previously discussed, the Trial Court held that Mr. Stewart was "not in contempt of Court for the violation of the Judgment entered after the original trial on March 6, 2002." Therefore, to the extent Mr. Stewart raises any issues concerning the contempt filings applicable to him, those issues are moot as Mr. Stewart was not found to be in contempt.

---

[3] That is not to say that the transfer necessarily would not be valid for other purposes.

The September 4, 2003, Judgment of the Trial Court holding the wooden structure to be a violation of both the Declaration of Restrictions and its previous Judgment is affirmed, and on remand the Trial Court is instructed to enter an appropriate order addressing this violation. The Trial Court's finding that Mrs. Stewart was in "contempt" is vacated. On remand, the Trial Court is instructed to clarify whether it found Mrs. Stewart in criminal or civil contempt and set forth what it deems to be appropriate sanctions. If Mrs. Stewart was sought to be held in civil contempt, the Trial Court is further instructed to conduct a hearing regarding the reasons for the transfer of the property from Mrs. Stewart to Mr. Stewart in order to determine if those reasons are such that a finding of civil contempt against Mrs. Stewart still would be appropriate.

## Conclusion

The Judgment of the Trial Court is affirmed in part and vacated in part, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below. Exercising our discretion, costs on appeal are assessed against the Appellants, Janice K. Stewart and Ed Stewart, and their surety.

_____
D. MICHAEL SWINEY, JUDGE